UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| BAYOU MANAGEMENT, LLC, SAMUEL ISRAEL III, DANIEL E. MARINO, and RICHMOND FAIRFIELD ASSOCIATES, CERTIFIED PUBLIC ACCOUNTANTS PLLC | |
| Defendants. | |

Judge McMahon

05 CIV. 8374

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF, AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT

### I.

### SUMMARY

1.      From at least January 1998 through August 2005 (the "relevant time"), Bayou

Management, LLC, a commodity pool operator ("CPO") registered with the plaintiff Commodity

Futures Trading Commission ("CFTC") as such, and defendant Samuel Israel III ("Israel"), have

employed schemes to defraud or have engaged in practices which have operated as a fraud or

deceit upon, actual and prospective commodity pool participants by misrepresenting:  the rates of

return Bayou Management, LLC generated for its pool participants; the value of assets it

managed; the existence and identity of the accounting firms that audited the pool operated by

Bayou Management, LLC; its trading activity; and the nature of the instruments in which it

invested participant funds.  Bayou Management, LLC and Israel also employed schemes to

defraud or have engaged in practices which have operated as a fraud or deceit upon, actual and

prospective commodity pool participants by failing to disclose: the chief financial officer's

1

affiliation with the firm that purportedly audited Bayou Management, LLC pools; the fact that

Bayou Management, LLC had ceased trading; and the fact Bayou Management, LLC traded in

unauthorized investments.  Bayou Management, LLC and Israel have also employed schemes to

defraud or have engaged in practices which have operated as a fraud or deceit upon, actual and

prospective commodity pool participants by: misappropriating their funds; acquiring their funds

through false pretenses; unauthorized trading; and causing them to pay federal income tax upon

nonexistent income.  Bayou Management, LLC has also violated Commission Regulations in

that it submitted to the NFA purported "certified" annual reports that were not prepared by an

independent public accountant; and commingled pool participant funds.

     2.      Daniel Marino ("Marino") and Richmond Fairfield Associates, Certified Public

Accountants PLLC ("Richmond Fairfield"), aided and abetted Bayou Management, LLC's

violations.

     3.      Bayou Management LLC, and Israel, as an associated person of Bayou

Management, LLC, have thus engaged in, are engaged in, or are about to engage in acts and

practices in violation of Sections 4$o$(1) and 9(a)(3) of the Commodity Exchange Act, as amended

("CEA"), 7 U.S.C. §§ 6$o$(1) and 13(a)(3) (2002) and CFTC Regulations 1.16 and 4.20.  Further,

pursuant to Section 13(a) of the CEA, 7 U.S.C. § 13c(a), defendants Marino and Richmond

Fairfield are also liable for the violations of Bayou Management, LLC, in that they aided and

abetted these violations.  Moreover, pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b),

Israel is liable for every violation of Bayou Management, LLC as he is the controlling person of

Bayou Management, LLC.

     4.      At all times relevant, and in regard to all conduct alleged herein, Israel and

Marino were agents of Bayou Management, LLC and acted within the scope of their

employment. As such, Bayou Management, LLC, is liable for Israel's and Marino's conduct pursuant to Section 2(a)(1)(B), 7 U.S.C. § 2(a)(1)(B)

5.    Unless restrained and enjoined by this court, the defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.

## JURISDICTION AND VENUE

6.    Section 1a(5) defines a "commodity pool operator" as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and in connection therewith, has solicited, accepted or received funds, securities or property from others for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

7.    Section 4o(1) of the CEA, 7 U.S.C. § 6o (2002), prohibits commodity pool operators or associated persons of commodity pool operators from directly or indirectly: (1) employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or, (2) engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

8.    Section 6c of the CEA, 7 U.S.C. § 13a-1 (2002), authorizes the CFTC to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the CEA or any CFTC rule, regulation or order thereunder.

9.    Venue properly lies with this Court pursuant to Section 6c(e) of the CEA, 7 U.S.C. § 13a-1(e) (2002), in that defendants are found in, inhabit, or transact business, among

other places, in this District or the acts and practices in violation of the CEA have occurred, are occurring, or are about to occur within this District, among other places.

## III.

## THE PARTIES

10.    Plaintiff **Commodity Futures Trading Commission** ("CFTC") is a federal independent regulatory agency charged with the administration and enforcement of the CEA, 7 U.S.C. §§ 1 et seq., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 et seq.

11.    Defendant **Bayou Management, LLC** ("Bayou Management, LLC") is a business entity organized in New York, with a principal business address of 40 Signal Road, Stamford, CT 06902. Bayou Management, LLC was registered with the Commission as a CPO beginning on April 9, 1996.

12.    Defendant **Samuel Israel III** ("Israel") is an individual residing in Bedford, NY. Israel is the sole owner of Bayou Management, LLC and head trader for the funds operated by that entity. Israel registered with the CFTC as an associated person ("AP") of Bayou Management, LLC and is a principal of Bayou Management, LLC. Israel is the Chief Executive Officer and Chief Investment Officer of Bayou Management, LLC. Israel is the sole owner of Bayou Management, LLC.

13.    Defendant **Daniel E. Marino** ("Marino") is the chief operating officer and chief financial officer of Bayou Management, LLC. In materials distributed by Bayou Management, LLC, Marino has held these two positions since 1996. He is a principal of Bayou Management, LLC. Marino created and is the sole owner of Richmond Fairfield. Marino is also listed as the registered agent for Richmond Fairfield from October 10, 2000 to April 29, 2003. Further, he is

identified as the member/manager of Richmond Fairfield in records the state of New York

maintains on those with professional licenses.

14.     Defendant **Richmond Fairfield Associates, Certified Public Accountants**

**PLLC** ("Richmond Fairfield"), is a business entity organized in New York on or about October

10, 2000, with a principal business address in New York, New York.  Richmond Fairfield

submitted purportedly "certified" annual reports relating to funds managed and operated by

Bayou Management, LLC.

## IV.

### FACTS

15.     On or about March 11, 1996, Bayou Fund, LLC ("Original Bayou Fund")

commenced operations as a commodity pool, acquiring commodity pool identification number

P004207 from the National Futures Association ("NFA").  Consequently, investors in the Bayou

Fund LLC constitute pool participants, as that term is used in Section 4$o$(1) of the CEA.  7

U.S.C. § 6o(1) (2002).

16.     In April 1996, Bayou Management, LLC registered with the CFTC as a

commodity pool operator ("CPO") and as a commodity trading advisor ("CTA").  During the

same month, Israel registered with the CFTC as an AP of Bayou Management, LLC and the

NFA listed him as a principal of Bayou Management, LLC.

17.     In May 1996, Bayou Securities, LLC registered with the CFTC as a commodity

futures introducing broker "("IB").  In that same month, Israel registered with the CFTC as an

AP of Bayou Securities, LLC and the NFA listed him as a principal of that firm.

18.     In December 1997, the NFA listed Marino as a principal of Bayou Securities.  In

May 2005, the NFA listed Marino as a principal of Bayou Management, LLC.

19.    At all times during the relevant period, Israel has been Chief Executive Officer and Chief Investment Officer of Bayou Management, LLC. Israel currently is the sole owner of Bayou Management, LLC. From at least 2001 through March 2004, Israel was responsible for and executed most of the trading activity at Bayou. He maintained offices in Stamford, Connecticut and also had trading execution facility at his home in Bedford, New York. He determined the trading strategies for the pools operated by the firm throughout the relevant period and communicated his market views to pool participants on a regular basis, describing the purported results of said strategies. Although absent from work during sporadic periods of convalescence, during these periods minimal trading activity took place. Israel held himself out as an experienced and successful trader, employing as his trading methodology a variety commonly known as "day trading." Israel hired and fired Bayou Management, LLC employees and was responsible for material aspects of its business. Israel approved information that was included in materials provided to actual and prospective pool participants/investors. At all times relevant, Israel was aware that Bayou Management, LLC's trading of pool participants' funds was not profitable, incurred losses, and that the information of such was withheld from actual and prospective pool participants/investors. Israel had access to Bayou Management, LLC's financial and accounting documents.

20.    At all times during the relevant period, Marino performed the functions of Bayou Management, LLC's Chief Operating Officer and Chief Financial Officer. Marino also was aware that Bayou Management LLC's trading of pool participants' funds was not profitable, incurred losses, and that the information of such was withheld from actual and prospective pool participants/investors. Marino had access to, and controlled, Bayou Management, LLC's financial and accounting documents.

21.    Bayou Management LLC's pool participants/investors were individuals or entities that qualify as "accredited investors." The minimal level of investment was $250,000. A number of Bayou's pool participants/investors are commodity pools operated by registered CPOs, or CPOs investing for their proprietary accounts.

22.    According to the Operating Agreement for the Original Bayou Fund, the "Permitted Business" of the Original Bayou Fund included the purchase of, and investment in, financial instruments, indices, and derivatives. The Operating Agreement also disclosed that a "Permitted Business" of the Original Bayou Fund was the execution of commodities transactions. The same document authorized the "Manager" of the Original Bayou Fund to "open, maintain, and close accounts with securities and commodities brokers."

23.    Between January to February 2003, Bayou Management, LLC, by and through Israel and Marino, ceased operating the Original Bayou Fund and instead created at least four successor commodity pools: "Bayou Accredited Fund, LLC," "Bayou Affiliates Fund, LLC," "Bayou No Leverage Fund, LLC," and "Bayou Superfund, LLC" (collectively, the "Successor Pools"). The Successor Pools were incorporated in the State of Delaware on January 28, 2003. The NFA assigned the following pool identification numbers to the Successor Pools, respectively: P020066, P020068, P020069, and P020071. Consequently, investors in the Bayou Accredited Fund, Bayou Affiliates Fund, Bayou No Leverage Fund, and Bayou Superfund, constitute pool participants, as that term is used in Section 4o(1) of the CEA. 7 U.S.C. § 6o(1) (2002).

24.    According to Operating Agreements for the various Successor Pools the "Permitted Business" of these Successor Pools included the purchase of, and investment in, financial instruments, indices, and derivatives. These Operating Agreements also disclosed that

a "Permitted Business" of the Successor Pools was the execution of commodity transactions. These same documents authorized the "Manager" of the Successor Pools to "open, maintain, and close accounts with securities and commodities brokers."

25.    From at least February 2002 through March 2004, Bayou Management, LLC engaged in commodity futures and options transactions on behalf of the pool participants of the Original Bayou Fund and the Successor Pools.   According to materials provided by Bayou Management, LLC to pool participants/investors, Bayou Management, LLC conducted its trading through Bayou Securities.  Such activity generated commissions for Bayou Securities.

**Deceits, Material Misrepresentations and Omissions of Facts**

26.    From at least January 1998 through August 2005, Bayou Management, LLC, by and through Israel and Marino, has employed schemes to defraud or have engaged in practices which have operated as a fraud or deceit upon, actual and prospective Original Bayou Fund, LLC's participants/investors and the Successor Pool's participants/investors.  Bayou Management, LLC, by and through Israel and Marino, perpetrated such frauds and deceits by using the U.S. mail or other means of interstate commerce.

27.    From at least March 2001 through March 2005, Bayou Management, LLC, by and through Israel and Marino, represented to its pool participants/investors that the Original Bayou Fund and the Successor Pools were earning profits.  For example, in "certified" annual reports, generated by Marino and approved by Israel, Bayou Management, LLC, represented  that the Original Bayou Fund and the Successor Pools cumulatively had generated a net profit of:

> 2000 - $1,995,652
> 2001 - $4,172,777
> 2002 – $12,933,171
> 2003 - $43,159,671
> 2004 - $54,307,893

These "certified" annual reports were submitted to actual and prospective pool participants/investors. Contrary to these profit representations, the Original Bayou Fund and Successor Pools never generated a net annual profit and, in fact, sustained trading losses. These false representations fraudulently induced individuals and entities into becoming pool participants/investors. These false representations fraudulently lulled individuals and entities into remaining pool participants/investors. Israel and Marino knew these representations were false and misleading for they knew that Bayou Management, LLC sustained losses rather than profits.

28.     From at least March 2001 through March 2005, Bayou Management, LLC, by and through Israel and Marino, represented to its pool participants/investors that the Original Bayou Fund and the Successor Pools had varying amounts of net assets under management. For example, in "certified" annual reports, generated by Marino and approved by Israel, Bayou Management, LLC represented that the Original Bayou Fund and the Successor Pools, cumulatively, had under management the following amounts of assets:

2000 - $16,465,023<br>
2001 - $85,354,183<br>
2002 – $148,760,333<br>
2003 - $323,002,549<br>
2004 - $410,626,200

These "certified" annual reports were submitted to actual and prospective pool participants/investors. Contrary to these representations, the Original Bayou Fund and Successor Pools did not have these amounts of funds under management at the time periods claimed. These false representations fraudulently induced individuals and entities into becoming pool participants/investors. These false representations fraudulently lulled individuals and entities into remaining pool participants/investors. Israel and Marino knew these representations were

9

false and misleading for they included in the net asset amount the profits they had purportedly generated.

29.    From at least December 2000 through August 2005, Bayou Management, LLC, by and through Israel and Marino, provided pool participants/investors with Department of the Treasury Internal Revenue Service (IRS) forms. Specifically, Bayou Management, LLC provided their pool participants/investors with Schedule K-1 forms that purportedly reported the amount of capital gains earned by the pool participants/investors as a result of their participation in the Original Bayou Fund as well as the Successor Pools. Israel and Marino approved the submission of these forms to pool participants/investors. The submission of these forms may have caused pool participants/investors to pay, or subjected them to, undue taxes. However, since no profits were actually generated by Bayou Management, LLC's trading of the Original Bayou Fund, as well as the Successor Pools, the Schedule K-1 forms falsely reported non-existent capital gains and deceived pool participants/investors. As a result of this deceit, pool participants/investors paid funds to the federal government as taxes that were not due and owing.

30.    From at least December 2000 through August 2005, Bayou Management, LLC, by and through Israel and Marino, represented to actual and prospective pool participants/investors that the Original Bayou Funds and the Successor Pools' financial transactions were certified by an independent public accountant, to-wit: Richmond Fairfield. Contrary to these assertions, Richmond Fairfield was not an independent public accountant. Rather, it was an entity created by Daniel Marino for the purpose of concealing the ongoing fraud perpetrated by Bayou Management, LLC, Israel, and Marino. Marino also fabricated the "certified" annual reports produced under the name Richmond Fairfield. In furtherance of this deceit, Marino leased office space for the purpose acquiring a mailing address and telephone

number for Richmond Fairfield. Equipped with these two minimal affectations of legitimacy, Marino received inquiries from actual and prospective pool participants/investors relating to Richmond Fairfield's "audits" of Bayou Management, LLC and its operation of the Original Bayou Fund as well as the Successor Pools. However, when such inquiries were made, Marino either did not respond or, if he did, used an assumed name, to-wit: Mathew or Matt Richmond. No "Matt" or "Mathew" Richmond is listed as a CPA in the state of New York.

31.    Israel was aware of Marino's deceit described above in paragraph 30 and was also aware that Richmond Fairfield was not an independent public accountant. Israel knew that the sole purpose of Richmond Fairfield was to supply a veneer of legitimacy to Bayou Management, LLC's operations. Israel was listed as the registrant of a Richmond Fairfield website, *RichmondFairfield.com*. The email address provided to the website's domain registry was bayoufund@aol.com. The address provided to the domain registry is 40 Signal Road, Stamford CT 06902. This is the same address as Bayou Management, LLC's offices.

32.    Pursuant to CFTC Regulation 4.7(b)(3), from at least March 2001 to March 2004, Bayou Management, LLC was required to provide the NFA with an annual report for the Original Bayou Fund. Pursuant to that CFTC regulation, Bayou Management, LLC provided to the NFA the purported "certified" annual reports fabricated by Marino through Richmond Fairfield. Pursuant to CFTC Regulation 1.16, "certified" annual reports must be prepared by an independent certified public accountant or independent licensed public accountant. Bayou Management, LLC audits were not conducted by an independent certified public accountant or independent licensed public accountant. Rather, they were a sham and the annual reports that resulted from these audits were also fabricated by Marino, who was not independent from Bayou

Management, LLC. Both Israel and Marino knew the annual reports submitted to the NFA were not conducted by an independent accountant.

33.    Pursuant to CFTC Regulation 4.22(c), from at least March 2004 to March 2005, Bayou Management, LLC was required to provide the NFA with annual reports for the Successor Pools. Pursuant to CFTC Regulation 4.22(c), Bayou Management, LLC was required to provide to the NFA with "certified" annual reports. Pursuant to CFTC Regulation 4.22(c), Bayou Management, LLC submitted "certified" annual reports fabricated by Marino through Richmond Fairfield. Pursuant to CFTC Regulation 1.16, "certified" audits must be prepared by an independent certified public accountant or independent licensed public accountant. Bayou Management, LLC audits were not conducted by an independent certified public accountant or independent licensed public accountant. Rather, they were completely fabricated and also created by Marino, who was not independent from Bayou Management, LLC. Both Israel and Marino knew the audits submitted to the NFA were not conducted by an independent accountant.

34.    From at least March 2001 through March 2005, Bayou Management, LLC, by and through Israel and Marino, represented to pool participants/investors that its pools' financial transactions were audited by actual independent public accountants, to-wit: Grant Thornton, Deloitte Touche, and Hertz, Herson & Co. These material representations were false and misleading because Grant Thornton, Deloitte Touche and Hertz, Herson & Co never audited Bayou Management, LLC's pools. In reality, Hertz, Herson & Co. actually audited Bayou Securities. For example:

- In October 2001 to at least April 2002, Bayou Management LLC claimed that Deloitte Touche audited Bayou Management, LLC's "offshore" fund and that Grant Thornton audited Bayou Management, LLC's onshore fund.

- In June 2002, Bayou Management, LLC claimed that Grant Thornton audited Bayou Management, LLC.

- In October 2002, Bayou Management, LLC claimed that Hertz, Herson & Co. conducted an audit of Bayou Management, LLC on December 31, 2001.

- In March 2003, Bayou Management, LLC claimed that Hertz, Herson & Co. audited Bayou Management, LLC for the first time in 2002, and that previously Richmond Fairfield served as its auditor.

- In February 2005, Bayou Management, LLC claimed that Hertz, Herson & Co. audited Bayou Management, LLC.

Marino made these misrepresentations or approved their inclusion in the Bayou Management, LLC's materials.

35.    From at least January 1998 through March 2003, in various materials provided to prospective and actual pool participants/investors that identified and described Bayou Management, LLC officers and employees, Bayou Management, LLC failed to disclose the material fact that Daniel Marino served as Bayou Management, LLC's chief financial officer and chief operating officer. In fact, Bayou Management, LLC failed to disclose any affiliation with Marino until at least the first quarter of 2002. Such omission was material because any Bayou pool participant/investor that had investigated Richmond Fairfield and learned that Marino was both the registered agent and listed as the "member/manager" for Richmond Fairfield in state of New York records, would have considered it significant to also know that Marino was a principal, CFO, and COO of Bayou Management, LLC. Israel knew of Marino's affiliation with Bayou Management, LLC and knew that it was not included in materials provided to pool participants/investors that described officers and employees of Bayou Management, LLC.

36.    From at least April 2004 through August 2005, Bayou Management, LLC, by and through Israel and Marino, represented in various materials submitted to actual and prospective pool participants/investors that Bayou Management, LLC was actively trading pool participant/investors' funds. These material representations were false and misleading because

13

Bayou Management, LLC had ceased all trading activity on or about March 2004.

Alternatively, Israel's and Marino's failure to disclose the material fact that Bayou Management, LLC had ceased trading on behalf of the Successor Pools was a material omission. Israel knew that Bayou Management, LLC had ceased trading after March 2004 because he conducted the trading for that entity. Israel also told pool participants/investors that he continued to trade subsequent to March 2004.

37.    Pursuant to the terms of the operating agreements for the various pools managed by Bayou Management, LLC, the permitted business activities authorize Bayou Management, LLC to trade securities and derivatives. From at least April 2004 through July 2005, Bayou Management, LLC, by and through Israel and Marino, had resorted to investing in other schemes that would purportedly generate above-average returns. Neither Israel nor Marino disclosed the fact that Bayou Management, LLC invested in these types of schemes and transactions. Consequently, Bayou Management, LLC's failure to disclose these transactions to Bayou Management, LLC's pool participants/investors, was a material omission. Further, these transactions were unauthorized transactions.

### Israel and Marino Misappropriated Pool Participants/Investors' Funds and Cheated Those Individuals

38.    From at least March 1999 through the present, Bayou Management, LLC, by and through Israel and Marino, misappropriated and cheated pool participants/investors funds. Bayou Management, LLC, by and through Israel and Marino, perpetrated such misappropriations and cheats by using the U.S. mail or other means of interstate commerce.

39.    For example, according to materials distributed by Bayou Management, LLC, it is entitled to allocate to itself 20% of the net profits generated by the performance of the Original Bayou Fund and the Successor Pools. This incentive fee was the only form of compensation

agreed upon between Bayou Management, LLC and its pool participants/investors. Pursuant to

that fee arrangement, and according to materials provided to pool participants/investors, Bayou

Management, LLC, by and through Israel and Marino, assessed and allegedly acquired the

following fees:

> 2000 - $399,130
> 2001 - $834,555
> 2002 - $2,586,635
> 2003 - $8,631,935
> 2004 - $10,861,578

Despite these assessments, however, from at least 1999 to August 2005, the Original Bayou

Fund as well as the Successor Pools never generated the level of net profits that would have

entitled Bayou Management, LLC to the amount of fees it assessed. For example, at the end of

2003, the Bayou Superfund had an actual, total value of approximately $53,600,000 and had lost

approximately $35,000,000 in trading through the course of the year. Thus, according to the

terms of fee arrangement between Bayou Management, LLC and its pool participants/investors,

Bayou Management, LLC was not entitled to any compensation from the Bayou Superfund for

the management of that pool. Both Israel and Marino knew that Bayou Management, LLC had

not generated profits as a result of its trading and knew they were not entitled to any incentive

fees.

     40.    Bayou Management, LLC and Defendant Israel misappropriated the funds of the

Bayou Pools' participants. For example, on July 8, 2004, $120 million was transferred from a

U.S. Citibank account in the name of Bayou Management LLC, referred to as the "Bayou Fund

Special Account," to an account at Deutsche Postbank in Germany in the name of Bayou Fund,

LLC. The dollars were converted to €96,864,000 [Euros] purportedly to earn interest before

being converted back to U.S. dollars and returned to the Citibank account in the U.S. However, the funds were not transferred back to Bayou Management, LLC's account in the U.S.

41.    Rather, a document, purporting to be a Postbank transaction record, indicates that on October 11, 2004, €97,953,720 was transferred from Postbank to an account in the name of "Bayou Fund" at ODL Securities Ltd. in London, U.K. However, ODL Securities records do not confirm this transfer. Rather, ODL Securities records show that on December 7, 2004, €90,000,000 was deposited into an ODL Securities account in the name of "Sam Israel III" rather than in an account held for the benefit of the funds true owners, the pool participants/investors. Israel knowingly transferred pool participants/investors' funds into his own account.

42.    From at least January 1999 through the present, Israel and Marino have acquired Original Bayou Fund participants' funds and Successor Pools participants' funds under false pretenses, and thereby cheated their pool participants/investors. Specifically, Bayou Securities, LLC was formed to serve as the introducing broker for both the securities and commodity futures transactions executed by Bayou Management, LLC. Both Israel and Marino were aware of this fact. Bayou Securities earned a commission on every trade placed on behalf of Bayou Management, LLC and that commission was assessed from pool participants/investors funds. Both Israel and Marino were aware of this fact. Israel and Marino drew a salary from Bayou Securities, and were, therefore, aware of this fact. However, as set out above, funds managed by Bayou Management, LLC and traded through Bayou Securities were fraudulently acquired. Both Israel and Marino were aware of this fact. Consequently, both Israel and Marino knowingly acquired pool participants/investors' funds under false pretenses.

**V.**

**<u>VIOLATIONS OF THE COMMODITY EXCHANGE ACT</u>**
**<u>AND COMMISSION REGULATIONS</u>**

**<u>COUNT I</u>**

**VIOLATIONS OF SECTION 4o(1) OF THE CEA:**
**FRAUD BY A CPO, AN ASSOCIATED PERSON OF A CPO,**
**<u>AND THEIR AIDERS AND ABETTORS</u>**

43.    Paragraphs 1 through 42 are realleged and incorporated herein.

44.    During the relevant time period, Bayou Management, LLC acted as a CPO in that it engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and in connection therewith, has solicited, accepted or received funds, securities or property from others for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility. During this time period, Israel acted as an AP and principal of Bayou Management, LLC, a registered CPO and his conduct alleged above occurred during the scope of his employment with Bayou Management, LLC. During this time period, Marino acted as the COO and CFO of Bayou Management, LLC and his conduct alleged above occurred during the scope of his employment with Bayou Management, LLC.

45.    From at least January 1998 through August 2005, defendants Bayou Management, LLC, by and through Israel and Marino, and Israel in his individual capacity have violated Section 4o(1) of the CEA, 7 U.S.C. § 6o(1), in that they directly or indirectly employed or are employing a device, scheme, or artifice to defraud commodity pool participants, or have engaged or are engaging in transactions, practices or a course of business which operate as a fraud or deceit upon commodity pool participants by means of the acts and practices described in

paragraphs 26 through 42. Bayou Management, LLC is liable for both Israel's and Marino's conduct pursuant to Section 2(a)(1)(B) of the CEA. 7 U.S.C. § 2(a)(1)(B).

46.  In connection with such conduct, Defendants used or are using the mails and other means or instrumentalities of interstate commerce, directly or indirectly, to engage in business as a CPO and an AP of a CPO.

47.  The actions and omissions of Bayou Management, LLC and Israel were aided and abetted by Marino and Richmond Fairfield. Therefore, Marino and Richmond Fairfield are also liable for defendants Bayou Management, LLC's and Israel's violations of Section 4o(1) of the CEA, pursuant to Section 13(a) of the CEA, 7 U.S.C. § 13c(a).

48.  Israel, directly or indirectly, controlled Bayou Management, LLC and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Bayou Management, LLC's violations alleged in this count. Israel is thereby liable for Bayou Management, LLC's violations of Section 4o(1), pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b).

49.  Each act of making false reports, false statements, and material omissions that occurred during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the CEA, 7 U.S.C. § 6o(1).

## COUNT II

### VIOLATIONS OF SECTION 9(a)(3) OF THE CEA:
### FALSE STATEMENTS MADE IN DOCUMENTS REQUIRED TO BE FILED UNDER
### THE CEA OR CFTC REGULATIONS

50.  Paragraphs 1 through 42 are realleged and incorporated herein.

51.    During the relevant time period, Israel and Marino knowingly made, or caused to be made, false statements in a report or document required to be filed under CFTC Regulations 4.7(b)(3) and 4.22(c), thereby violating Section 9(a)(3) of the CEA.

52.    Because Israel and Marino were agents of Bayou Management, LLC and were acting within the scope of their employment in violating Section 9(a)(3) of the CEA, 7 U.S.C. § 13(a)(3), Bayou Management, LLC is liable for both Israel's and Marino's conduct pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B).

53.    Because Marino was an agent of Bayou Management, LLC and was acting within the scope of his employment in violating Section 9(a)(3) of the CEA, 7 U.S.C. § 13(a)(3), Richmond Fairfield is liable for Marino's conduct pursuant to Section 2(a)(1)(B) of the CEA. 7 U.S.C. § 2(a)(1)(B).

54.    Each act of false statements in a report or document required to be filed under CFTC Regulations 4.7(b)(3) and 4.22(c) and thereby violating Section 9(a)(3) of the CEA that occurred during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 9a(3) of the CEA, 7 U.S.C. § 13(a)(3).

### COUNT III

### VIOLATION OF CFTC REGULATION 1.16:
### SUBMITTING A "CERTIFIED" ANNUAL REPORT NOT PERFORMED BY AN INDEPENDENT ACCOUNTANT

55.    Paragraphs 1 through 42 are re-alleged and incorporated herein.

56.    Pursuant to CFTC Regulations 4.7(b)(3) and 4.22(c), Bayou Management, LLC submitted to the NFA purported "certified" annual reports for the CFTC pools it operated.  7 C.F.R. §§ 4.7(b)(3) and 4.22(b) (2004).  CFTC Regulation 1.16 requires that "certified" annual reports must be prepared by an independent public accountant or independent licensed public

accountant.  17 C.F.R. § 1.16 (2004).  Bayou Management, LLC violated CFTC Regulation 1.16 by submitting annual reports that were not performed by an independent public accountant or independent licensed public accountant.  Bayou Management, LLC is liable for both Israel's and Marino's conduct pursuant to Section 2(a)(1)(B) of the CEA.  7 U.S.C. § 2(a)(1)(B).

57.  The submission of the purported "certified" annual reports to the NFA were aided and abetted by Marino.  Therefore, Marino is also liable for defendants Bayou Management LLC's violations of CFTC Regulation 1.16, 17 C.F.R. § 1.16 (2004), pursuant to Section 13(a) of the CEA, 7 U.S.C. § 13c(a).

58.  Israel, directly or indirectly, controlled Bayou Management, LLC and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Bayou Management, LLC's violations alleged in this count.  Israel is thereby liable for Bayou Management, LLC's violations of CFTC Regulation 1.16, 17 C.F.R. § 1.16 (2004), pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b).

59.  Each act of submitting an annual report that was not performed by an independent certified public accountant or independent licensed public accountant during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of CFTC Regulation 1.16.  17 C.F.R. § 1.16 (2004).

### COUNT IV

### VIOLATION OF CFTC REGULATION 4.20(c):
### COMMINGLING FUNDS OF POOL

60.  Paragraphs 1 through 42 are re-alleged and incorporated herein.  CFTC Regulation 4.20(c) prohibits CPOs from commingling the property of any pool it operates with the property of any other person.  By transmitting pool funds from the Bayou Management Account held at Postbank to the ODL account held in his name, Israel commingled his funds with those of Bayou

Management LLC's pool participants.  Accordingly, Bayou Management, LLC violated CFTC Regulation 4.20(c).  17 C.F.R. § 4.20(c) (2004).

61.    The commingling of the pools funds was aided and abetted by Marino.  Therefore, Marino is also liable for Defendants Bayou Management LLC's violations of CFTC Regulation 1.16.  17 C.F.R. § 1.16 (2004) pursuant to Section 13(a) of the CEA, 7 U.S.C. § 13c(a).

62.    Israel, directly or indirectly, controlled Bayou Management, LLC and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Bayou Management, LLC's violations alleged in this count.  Israel is thereby liable for Bayou Management, LLC's violations of CFTC Regulation 4.20(c) 17 C.F.R. § 1.16 (2004), pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b).

63.    Each act of commingling pool participants funds during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of CFTC Regulation 4.20(c).  17 C.F.R. § 4.20(c) (2004).

## VI.

### RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the CEA, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.    Find Defendants liable for violating Sections 4o(1) and 9(a)(3) of the CEA, 7 U.S.C. §§ 6o(1) and 13(a)(3), and CFTC Regulations 1.16 and 4.20(c), 17 C.F.R. §§ 1.16 and 4.20(c);

B.    Enter an order of permanent injunction enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation

with Defendants who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

      1.     Engaging in conduct in violation of Sections 4o(1) and 9(a)(3) of the CEA, 7 U.S.C. §§ 6o(1) and 13(a)(3); and Commission Regulations 1.16 and 4.20(c), 17 C.F.R. §§ 1.16 and 4.20(c);

      2.  Directly or indirectly soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity futures or options contracts;

      3.  Engaging in, controlling, or directing the trading of any commodity futures or options accounts, on his own behalf or for or on behalf of any other person or entity, whether by power of attorney or otherwise;

      4.  Introducing customers to any other person engaged in the business of commodity futures and options trading;

      5.  Issuing statements or reports to others concerning commodity futures or options trading;

      6.  Otherwise engaging in any business activities related to commodity futures or options trading; and

      7.  Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration from the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

     C.     Enter an order pursuant to Section 6c(a) of the CEA restraining Defendants and all persons insofar as they are acting in the capacity of Defendants' agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

      Destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations;

Refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations; and

Withdrawing, transferring, removing, dissipating, concealing or disposing of, in any manner, any funds, assets, or other property, wherever situated, including but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan account, whether domestic or foreign, held by, under the control, or in the name of the Defendants;

D.    Enter an order directing that defendants provide the Plaintiff immediate and continuing access to their books and records, make an accounting to the Court of all of Defendants' assets and liabilities, together with all funds they received from and paid to investors and other persons, including the names, addresses and telephone numbers of any such persons from whom he received such funds from January 1997 to the date of such accounting, and all disbursements for any purpose whatsoever of funds received from commodity investors, including salaries, commissions, fees, loans and other disbursements of money and property of any kind, from January 1997 to and including the date of such accounting. At a minimum, the accounting should include a chronological schedule of all cash receipts and cash disbursements. In addition, each transaction shall be classified as business or personal. All business transactions shall disclose the business purpose of the transaction. The accounting shall be provided in an electronic format such as Quicken, Excel, or other accounting or electronic format spreadsheet. In addition, the Defendants shall supply true and accurate copies of any balance sheets, income statements, statement of cash flow, or statement of ownership equity previously prepared for the Defendants' business(es);

E.    Enter an order requiring Defendants to disgorge to any officer appointed or directed by the Court or directly to the pool participants all benefits received including, but not

23

limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the CEA as described herein, including pre-judgment interest;

F.    Enter an order requiring Defendants to make restitution by making whole each and every pool participant whose funds were received or utilized by them in violation of the provisions of the CEA as described herein, including pre-judgment interest;

G.    Enter an order requiring Defendants to pay civil penalties under the CEA, to be assessed by the Court, in amounts of not more than the higher of (1) triple the monetary gain to Defendant for each violation of the CEA and Regulations or (2) $120,000 for each violation of the CEA and Regulations prior to October 23, 2004 or $130,000 for violations occurring after October 23, 2004;

H.    Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (1994); and

I.      Enter an Order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.

Dated: September _____, 2005          Respectfully submitted,

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581

Joseph Rosenberg (JR 5225)
140 Broadway
New York, New York  10005
(646) 746-9765 / jrosenberg@cftc.gov

Christine Ryall (CR 6041)
Eugene Smith (ES 2817)
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5318 / cryall@cftc.gov (Ryall)
(202) 418-5371 / esmith@cftc.gov (Smith)
(202) 418-5523 (facsimile)