*McMahon, J*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | : | Case No. 05cv8374 (CM) |
| | : | *Partial* |
| Plaintiff, | : | **CONSENT ORDER OF** |
| | : | **PERMANENT INJUNCTION AND** |
| v. | : | **OTHER ANCILLARY RELIEF** |
| | : | **AGAINST DEFENDANTS SAMUEL** |
| BAYOU MANAGEMENT, LLC, | : | **ISRAEL AND BAYOU** |
| SAMUEL ISRAEL, DANIEL E. | : | **MANAGEMENT LLC** |
| MARINO, and RICHMOND FAIRFIELD | : | |
| ASSOCIATES, CERTIFIED PUBLIC | : | |
| ACCOUNTANTS PLLC, | : | |
| Defendants. | : | |

On September 29, 2005, the United States Commodity Futures Trading Commission

("CFTC") filed the Complaint in this civil action against Defendants Bayou Management LLC

("Bayou Management"), Samuel Israel ("Israel") and others. The Complaint seeks injunctive

and other legal and equitable relief for violations of the antifraud and exchange trading

provisions of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.*, and the

Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq.*

## I.

## CONSENT AND AGREEMENT

To effect settlement of this action without a trial on the merits or further judicial

proceedings, Defendants Israel and Bayou Management consent to the entry of this *Consent*

*Order Of Permanent Injunction and Ancillary Equitable Relief Against Samuel Israel and Bayou*

*Management LLC* ("Order"). By consenting to this Order, Israel and Bayou Management:

(1) acknowledge service upon them of the summons and complaint in this action; (2) admit this

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

Court's personal and subject matter jurisdiction over them and this action; and (3) admit that venue properly lies with this Court.

Israel and Bayou Management waive: (1) all claims that they may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000), relating to or arising from this action and any right under EAJA to seek costs, fees, and other expenses relating to or arising from this proceeding; (2) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (3) all rights of appeal from this Order.

By consenting to the entry of this Order, Israel and Bayou Management neither admit nor deny the allegations of the Complaint or the Findings of Fact contained in this Order, except as to jurisdiction and venue, which they admit. Israel and Bayou Management do not consent to the use of this Order, or the findings of fact or conclusions of law, as the sole basis for any other proceeding brought by or involving the CFTC, other than a proceeding in bankruptcy relating to Israel or Bayou Management, or to enforce the terms of this Order. Solely with respect to any bankruptcy proceeding relating to Israel or Bayou Management or any proceeding to enforce this Order, Israel and Bayou Management agree that the allegations of the Complaint and the findings in this Order shall be taken as true and correct and be given preclusive effect, without further proof. Furthermore, Israel and Bayou Management agree to provide immediate notice to this Court and the CFTC by certified mail of any bankruptcy proceeding filed by, on behalf of, or against them. No provision of this Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against Israel, Bayou or any other person in any other proceeding.

2

Israel and Bayou Management agree that they, and their agents or employees acting under their authority or control, will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or finding or conclusion contained in this Order, or creating, or tending to create, the impression that this Order is without a factual basis; and (2) shall take any action or make or permit to be made any public statement denying, directly or indirectly, any of the findings or conclusions in this Order or creating, or tending to create, the impression that any allegation in the complaint or this Order is without factual basis, and Israel and Bayou Management shall undertake all steps necessary to ensure that all of their agents and employees understand and comply with this agreement. Nothing in this provision shall affect Israel's or Bayou Management's: (1) testimonial obligations or (2) right to take legal positions in other proceedings in which the CFTC is not a party.

Israel and Bayou Management consent to the continued jurisdiction of this Court for the purpose of determining the amounts of restitution and civil monetary penalties to be paid by them and enforcing the terms and conditions of this Order. Israel, individually and on behalf of Bayou Management, affirms that he has read this Order and agrees to this Order voluntarily, and that no promise or threat of any kind has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce his consent to this Order, other than as set forth specifically herein.

## II.

## FINDINGS AND CONCLUSIONS

**A.    Findings of Fact**

1.      Plaintiff Commodity Futures Trading Commission is a federal independent regulatory agency charged with the administration and enforcement of the CEA, 7 U.S.C. §§ 1 et seq., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 et seq.

2.      Defendant Bayou Management, LLC is a business entity organized in New York, with a principal business address in Stamford, CT.  Bayou Management was registered with the Commission as a commodity pool operation ("CPO") beginning on April 9, 1996.

3.      Defendant Samuel Israel III is an owner of Bayou Management and head trader for the pools operated by that entity.  Israel registered with the CFTC as an associated person ("AP") of Bayou Management and is listed with the NFA as a principal of Bayou Management. Israel is the Chief Executive Officer and Chief Investment Officer of Bayou Management, LLC.

4.      On or about March 11, 1996, Bayou Fund, LLC ("Original Bayou Fund") commenced operations as a commodity pool, acquiring commodity pool identification number P004207 from the National Futures Association ("NFA").  Consequently, investors in the Bayou Fund LLC constitute pool participants, as that term is used in Section 4o(1) of the CEA.  7 U.S.C. § 6o(1) (2002).

5.      In April 1996, Bayou Management registered with the CFTC as a commodity pool operator and as a commodity trading advisor ("CTA").  During the same month, Israel registered with the CFTC as an AP of Bayou Management and the NFA listed him as a principal of Bayou Management.

6.    In May 1996, Bayou Securities, LLC registered with the CFTC as a commodity futures introducing broker ("IB"). In that same month, Israel registered with the CFTC as an AP of Bayou Securities and the NFA listed him as a principal of that firm.

7.    At all times, Israel has been Chief Executive Officer and Chief Investment Officer of Bayou Management. Israel is an owner of Bayou Management and was responsible for material aspects of its business. From at least 2001 through March 2004, Israel was responsible for and executed most of the trading activity at Bayou. He maintained offices in Stamford, Connecticut and also had a trading execution facility at his home in Bedford, New York. He determined the trading strategies for the Bayou pools and communicated his market views to pool participants on a regular basis, describing the purported results of those strategies. Israel held himself out as an experienced and successful trader. Israel approved information that was included in materials provided to actual and prospective pool participants. At all times relevant, Israel was aware that Bayou Management's trading of pool participants' funds was not profitable, incurred losses, and that such information was withheld from actual and prospective pool participants. Israel had the ability to control, and exercised actual control, over Bayou Management. In exercising control over Bayou Management, Israel failed to act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations of law. He is therefore is a controlling person of Bayou Management.

8.    Bayou Management's pool participants were individuals or entities that qualify as "accredited investors," with a minimum investment of $250,000.

9.    According to its Operating Agreement, the "Permitted Business" of the Original Bayou Fund included the purchase of, and investment in, financial instruments, indices, and derivatives, as well as the execution of commodities transactions. The same document

authorized the "Manager" of the Original Bayou Fund to "open, maintain, and close accounts with securities and commodities brokers."

10.    Between January to February 2003, Bayou Management, by and through Israel and others, ceased operating the Original Bayou Fund and instead created at least four successor commodity pools: "Bayou Accredited Fund, LLC," "Bayou Affiliates Fund, LLC," "Bayou No Leverage Fund, LLC," and "Bayou Superfund, LLC" (collectively, the "Successor Pools"). The Successor Pools were incorporated in the State of Delaware on January 28, 2003, and the NFA assigned pool identification numbers to the Successor Pools, respectively:  P020066, P020068, P020069, and P020071. Consequently, participants/investors in the Bayou Accredited Fund, Bayou Affiliates Fund, Bayou No Leverage Fund, and Bayou Superfund, constitute pool participants, as that term is used in Section 4$o$(1) of the CEA.  7 U.S.C. § 6$o$(1) (2002).

11.    According to Operating Agreements for the various Successor Pools, the "Permitted Business" of these Successor Pools included the purchase of, and investment in, financial instruments, indices, and derivatives, as well as the execution of commodity transactions.  These same documents authorized the "Manager" of the Successor Pools to "open, maintain, and close accounts with securities and commodities brokers."

12.    From at least February 2002 through March 2004, Bayou Management engaged in commodity futures and options transactions on behalf of the pool participants of the Original Bayou Fund and the Successor Pools.

13.    According to materials provided by Bayou Management to pool participants, Bayou Management conducted trading through Bayou Securities.  Such activity generated commissions for Bayou Securities.

14.    From at least January 1998 through August 2005, Bayou Management, by and through Israel and others, employed schemes to defraud, or have engaged in practices which have operated as a fraud or deceit upon, actual and prospective participants/investors in the Original Bayou Fund and the Successor Pools.  Bayou Management, by and through Israel and others, perpetrated such frauds and deceits by using the U.S. mail or other means of interstate commerce.

15.    From at least March 2001 through March 2005, Bayou Management, by and through Israel and others, represented to pool participants that the Original Bayou Fund and the Successor Pools were earning profits.  Contrary to these representations, the Original Bayou Fund and Successor Pools never generated a net annual profit and, in fact, sustained trading losses.  Pool participants relied upon these false representations.  These false representations fraudulently induced individuals and entities into becoming pool participants and lulled individuals and entities into remaining pool participants.  Israel knew these representations were false and misleading.

16.    From at least March 2001 through March 2005, Bayou Management, by and through Israel and others, represented to its pool participants that the Original Bayou Fund and the Successor Pools had varying amounts of net assets under management.  Contrary to these representations, the Original Bayou Fund and Successor Pools did not have the claimed amounts of funds under management.  Pool participants relied upon these false representations.  These false representations fraudulently induced individuals and entities into becoming pool participants and lulled individuals and entities into remaining pool participants.  Israel knew these representations were false and misleading.

17.     From at least December 2000 through August 2005, Bayou Management, by and through Israel and others, provided pool participants with Department of the Treasury Internal Revenue Service (IRS) forms.  Specifically, Bayou Management provided their pool participants with Schedule K-1 forms that purportedly reported the amount of capital gains earned by the pool participants as a result of their participation in the Original Bayou Fund as well as the Successor Pools.  Israel approved the submission of these forms to pool participants.  The submission of these forms may have caused pool participants to pay, or subjected them to, undue taxes.  However, since no profits were actually generated by Bayou Management's trading of the Original Bayou Fund, as well as the Successor Pools, the Schedule K-1 forms falsely reported non-existent capital gains and deceived pool participants.  As a result of this deceit, pool participants may have paid funds to the federal government as taxes that were not due and owing.

18.     From at least December 2000 through August 2005, Bayou Management, by and through Israel, represented to actual and prospective pool participants that the Original Bayou Funds and the Successor Pools' financial transactions were certified by an independent public accountant.  Contrary to these assertions, the certifying accountant was not an independent public accountant.  Rather, it was an entity created by an officer of Bayou Management for the purpose of concealing the ongoing fraud perpetrated by Bayou Management, Israel, and others.  The officer also fabricated the "certified" annual reports produced under the name of the accounting firm.  Israel was aware that the accounting firm was not an independent public accountant.  Pool participants relied upon these false representations.

19.     Pursuant to CFTC Regulation 4.7(b)(3), from at least March 2001 to March 2004, Bayou Management was required to provide the NFA with an annual report for the Original

8

Bayou Fund. Pursuant to CFTC Regulation 1.16, certified annual reports must be prepared by an independent certified public accountant or independent licensed public accountant. Bayou Management provided to the NFA the purportedly certified annual reports fabricated by an officer of Bayou Management through an accounting firm he managed. Bayou Management audits were not conducted by an independent certified public accountant or independent licensed public accountant. Israel knew the annual reports submitted to the NFA were not conducted by an independent accountant.

20.    Pursuant to CFTC Regulation 4.22(c), from at least March 2004 to March 2005, Bayou Management was required to provide the NFA with annual reports for the Successor Pools. Pursuant to CFTC Regulation 4.22(c), Bayou Management was required to provide to the NFA with certified annual reports. Pursuant to CFTC Regulation 1.16, certified audits must be prepared by an independent certified public accountant or independent licensed public accountant. Bayou Management submitted purportedly certified annual reports fabricated by an officer of Bayou Management through an accounting firm he managed. Bayou Management audits were not conducted by an independent certified public accountant or independent licensed public accountant. Israel knew the audits submitted to the NFA for the Successor Pools were not conducted by an independent accountant.

From at least March 2001 through March 2005, Bayou Management, by and through Israel and others, represented to pool participants that its pools' financial transactions were audited by actual independent public accountants, including:  Grant Thornton, Deloitte Touche, and Hertz, Herson & Co. These material representations were false and misleading, because Grant Thornton, Deloitte Touche and Hertz, Herson & Co never audited Bayou Management's pools.

In reality, Hertz, Herson & Co. actually audited only Bayou Securities. Pool participants relied upon these false representations.

21.     From at least January 1998 through March 2003, in various materials provided to prospective and actual pool participants that identified and described Bayou Management officers and employees, Bayou Management failed to disclose the material fact that a particular individual served as Bayou Management's chief financial officer and chief operating officer. In fact, Bayou Management failed to disclose any affiliation with the officer until at least the first quarter of 2002. Such omission was material because any Bayou pool participant/investor that had investigated the accounting firm the officer managed and learned that the officer was both the registered agent and listed as the "member/manager" for the accounting firm in New York state records, would have considered it significant to know as well that the officer was also principal, CFO, and COO of Bayou Management. Israel knew of the officer's affiliation with Bayou Management and knew that it was not disclosed in materials provided to pool participants that described officers and employees of Bayou Management.

22.     From at least April 2004 through August 2005, Bayou Management, by and through Israel and others, represented in various materials submitted to actual and prospective pool participants that Bayou Management was actively trading pool participant/investors' funds. However, Bayou Management had ceased all trading activity on or about March 2004. Israel knew that Bayou Management had ceased trading after March 2004. Israel also told pool participants that he continued to trade subsequent to March 2004. Pool participants relied upon these false representations.

23.     Pursuant to the terms of the operating agreements for the various pools managed by Bayou Management the permitted business activities authorize Bayou Management to trade

securities and derivatives.  From at least April 2004 through July 2005, Bayou Management, by

and through Israel and others, invested in other schemes and transactions that would purportedly

generate above-average returns.  Israel did not disclose to pool participants the fact that Bayou

Management invested in these unauthorized schemes and transactions.

24.    From at least March 1999 through the present, Bayou Management, by and

through Israel and others, misappropriated and cheated pool participants of funds.  Bayou

Management, by and through Israel and others, perpetrated such misappropriations and cheats by

using the U.S. mail or other means of interstate commerce.

25.    According to materials distributed by Bayou Management, it was entitled to

allocate to itself 20% of the net profits generated by the performance of the Original Bayou Fund

and the Successor Pools.  This incentive fee was the only form of compensation agreed upon

between Bayou Management and its pool participants.  Pursuant to that fee arrangement, and

according to materials provided to pool participants, Bayou Management, by and through Israel

and others, assessed and acquired fees.  However, from at least 1999 to August 2005, the

Original Bayou Fund and the Successor Pools never generated the level of net profits that would

have entitled Bayou Management to the amount of fees it assessed.  Israel knew that Bayou

Management had not generated profits as a result of its trading and was not entitled to any

incentive fees.

26.    Bayou Management and Israel misappropriated the funds of the participants in the

Original Bayou Fund and the Successor Pools.  On July 8, 2004, $120 million was transferred

from a U.S. Citibank account in the name of Bayou Management LLC, referred to as the "Bayou

Fund Special Account," to an account at Deutsche Postbank in Germany in the name of Bayou

Fund, LLC.  The dollars were converted to €96,864,000.  Thereafter, ODL Securities records

11

show that on December 7, 2004, €90,000,000 of those funds was deposited into an ODL Securities account in the name of "Sam Israel III," rather than in an account held for the benefit of the funds true owners, the pool participants. Israel knowingly transferred pool participants' funds into his own account.

27.     From at least January 1999 through September 2005, Israel acquired Original Bayou Fund participants' funds and Successor Pools participants' funds under false pretenses, and thereby cheated the pool participants. Specifically, Israel and others formed Bayou Securities to serve as the introducing broker for transactions executed by Bayou Management. Bayou Securities earned a commission on trades placed on behalf of Bayou Management and that commission was assessed from pool participants' funds. Israel drew a salary from Bayou Securities. However, as set out above, funds managed by Bayou Management and traded through Bayou Securities were fraudulently acquired. Israel knowingly acquired pool participants' funds under false pretenses.

**B.     Conclusions of Law**

28.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

29.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Israel resides in and transacted Bayou Management business in the Southern

District of New York, and the acts and practices in violation of the Act occurred within this District, among other places.

30.    By the conduct described in Section IIA above, Israel repeatedly violated Section 4o(1) of the CEA, 7 U.S.C. § 6o(1), in that he directly or indirectly employed or is employing a device, scheme, or artifice to defraud commodity pool participants, or has engaged or is engaging in transactions, practices or a course of business which operate as a fraud or deceit upon commodity pool participants.  Bayou Management is liable for these violations as Israel's principal pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B).    Further, Israel is liable as a controlling person for Bayou Management's violations of Section 4o(1) pursuant to Section 13(b) of the CEA.

31.    By the conduct described in Section IIA above, Israel repeatedly violated Section 9(a)(3) of the CEA by knowingly making, or causing to be made, false statements in a report or document required to be filed under CFTC Regulations 4.7(b)(3) and 4.22(c), 17 C.F.R. §§ 4.7(b)(3) and 4.22(c) (2004).  Bayou Management is liable for these violations pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B).

32.    By the conduct described in Section IIA above, Bayou repeatedly violated CFTC Regulation 1.16, 17 C.F.R. § 1.16 (2004), by submitting annual reports that were not performed by an independent public accountant or independent licensed public accountant.  Israel is liable for Bayou Management's violations of CFTC Regulation 1.16, 17 C.F.R. § 1.16 (2004), pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b).

33.    By the conduct described in Section IIA above, Bayou Management violated CFTC Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2004), by commingling Israel's funds with those of Bayou Management's pool participants.  Israel is liable for Bayou Management's violations of

CFTC Regulation 4.20(c) 17 C.F.R. § 1.16 (2004), pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b).

## III.

### PERMANENT INJUNCTION

This Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. This Court therefore directs the entry of a permanent injunction, orders Israel and Bayou Management to pay restitution and civil monetary penalty in amounts to be determined at a later date, and orders other equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

A.     **IT IS HEREBY ORDERED** that Israel and Bayou Management, along with any of their agents, servants, employees or assigns and persons in concert or participation with them who receive actual notice of this Order by personal service or otherwise, and all other persons or entities served with a copy of this Order, are permanently restrained, enjoined, and prohibited from directly or indirectly:

1.     While acting as a Commodity Pool Operator, or an Associated Person of a Commodity Pool Operator, employing a device, scheme, or artifice to defraud commodity pool participants, or engaging in a transaction, practice or a course of business which operates as a fraud or deceit upon commodity pool participants, in violation of Section 4$o$(1) of the Act, including, but not limited to, conduct such as that set forth in Section IIA above;

2.     Making, or causing to be made, false statements in a report or document required to be filed under CFTC Regulations 4.7(b)(3) and 4.22(c), in violation of Section 9(a)(3) of the Act;

14

3.    Submitting to the National Futures Association "certified" annual reports not prepared by an independent public accountant or independent licensed public accountant, in violation of CFTC Regulation 1.16; and

4.    Commingling the property of any commodity pool with the property of any other person, in violation of CFTC Regulation 4.20(c).

**B.    IT IS HEREBY FURTHER ORDERED** that Israel and Bayou Management are permanently restrained, enjoined, and prohibited from directly or indirectly engaging in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including but not limited to, the following:

1.    Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

2.    Engaging in, controlling, or directing the trading of any futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

3.    Soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

4.    Placing orders or giving advice or price quotations, or other information in connection with the purchase or sale of commodity interest contracts for themselves and others;

5.    Introducing customers to any other person engaged in the business of commodity interest trading;

6.    Issuing statements or reports to others concerning commodity interest trading;

7.    Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from

15

registration with the CFTC, except as provided for in CFTC Regulation 4.14(a)(9), 17 C.F.R. §

4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required

to be registered, or exempted from registration, except as provided for in Regulation 4.14(a)(9),

17 C.F.R. § 4.14(a)(9); and

        8.     Engaging in any business activities related to commodity interest trading.

**IV.**

**<u>RESTITUTION AND CIVIL MONETARY PENALTY</u>**

     **IT IS HEREBY ORDERED** that Israel and Bayou Management shall comply fully with

the following terms, conditions and obligations relating to the payment of restitution and civil

monetary penalty:

**A.     RESTITUTION**

        1.     Israel and Bayou Management, jointly and severally with other defendants in this

action, shall make full restitution in an amount to be determined by agreement between the

CFTC and Israel within one hundred twenty (120) days of the issuance of this Order, or as soon

as possible thereafter by the Court after an evidentiary hearing, plus pre- and post-judgment

interest, to all persons who gave funds, either directly or indirectly, to defendants as a result of

the course of illegal conduct alleged in the Complaint.   Pre-judgment interest shall be

determined by using the underpayment rate established quarterly by the Internal Revenue Service

pursuant to 26 U.S.C. § 662(a)(2) from December 1999 to the date of this Order.  Post-judgment

interest shall be determined by using the Treasury Bill rate prevailing on the date of this Order

pursuant to 28 U.S.C. § 1961(a).

        2.     Payment procedure and distribution of restitution shall be determined by the

Court at a later date.

16

**B.    CIVIL MONETARY PENALTY**

1.    Israel and Bayou Management shall each pay a civil monetary penalty in an amount to be determined by agreement between the CFTC and Israel and Bayou Management within one hundred twenty (120) days of the issuance of this Order, or as soon as possible thereafter by the Court after an evidentiary hearing.  Upon satisfaction or other discharge of their restitution obligation, Israel and Bayou Management shall commence to pay the civil monetary penalties until the civil monetary penalties are paid in full.  Upon termination of the restitution and civil monetary penalty obligations, satisfaction of judgment will be entered.

2.    Israel and Bayou Management shall make payment of civil monetary penalties by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission and sent to the Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581, under cover of a letter that identifies Israel or Bayou Management and the name and docket number of this proceeding.  Israel or Bayou Management shall simultaneously transmit a copy of the cover letter and the form of payment to the Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, NW, Washington, DC 20581.

**V.**

**ASSET FREEZE AND ACCESS TO RECORDS**

**IT IS FURTHER ORDERED** that:

The terms of the Consent Order of Preliminary Injunction entered September 29, 2005, shall remain in effect until further order of this Court.

## VI.

## <u>SCOPE OF ORDER</u>

A.      This Court shall retain jurisdiction of this cause to determine restitution and civil

monetary penalties, assure compliance with this Order and for all other purposes related to this

action.  This Order shall be interpreted and enforced according to the Federal Rules of Civil

Procedure, the Local Rules of the United States District Court for the Southern District of New

York, and all provisions of the Act and CFTC Regulations, relating or referring to the obligations

hereunder.

B.      The following provisions shall apply to the terms and conditions of this Order:

1.      **Notices**:  All notices required by this Order shall be sent by certified mail, return

receipt requested.  Israel and Bayou Management shall provide the CFTC with

written notice of all changes to their contact telephone number(s) and/or mailing

address(es) within ten (10) calendar days of the change(s).

2.      **Waiver**:  The failure of any party to this Order or of any participant/investor at

any time to require performance of any provision of this Order shall in no manner

affect the right of the party or investor to enforce the same or any other provision

of this Order at a later time.  No waiver in one or more instances of the breach of

any provision contained in this Order shall be deemed or construed as a further or

continuing waiver of such breach or waiver of the breach of any other provision

of this Order.

3.      **Acknowledgements**:  Upon being served with a copy of this Order after entry by

this Court, Israel and Bayou Management shall sign an acknowledgment of

service and serve the acknowledgment on this Court and the CFTC within seven (7) calendar days.

4. **Invalidation**: If any provision, or the application of any provision of this Order is held invalid, the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

5.    **Integration**:  Nothing shall serve to amend or modify this Order in any respect,

unless:  (1) reduced to writing; (2) signed by all parties hereto; and (3) approved

by order of this Court.

**Done and Ordered this** 3 **day of** _April_ **2006, at White Plains, New**

York.

_____
**UNITED STATES DISTRICT JUDGE**

*Order of Permanent Injunction and Ancillary Equitable Relief Against Defendants Samuel Israel and Bayou Management LLC consented to and approved for entry by:*

_____
Samuel Israel III, individually and as
Managing Member of and on behalf of
Bayou Management LLC

Dated: 3-27-_   , 2006

_____
Lawrence S. Bader, Esq.
Attorney for Defendant Samuel Israel III

Dated: 3/24/   , 2006

_____
Christine M. Ryall (CR 6041)
Attorney for Plaintiff
U.S. Commodity Futures Trading
Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC  20581

Dated: 3/28   , 2006

20

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2006, the Consent Order of Permanent Injunction and Other Ancillary Relief Against Defendants Samuel Israel and Bayou Management LLC was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Local Rules on Electronic Service upon the following parties and participants:

Lawrence S. Bader, Esq.
Morvillo, Abramowitz, Grand, Iason &
Silberberg, P.C.
565 Fifth Avenue
New York, NY 10017
*Attorney to Defendant Samuel Israel*

Bayou Management LLC
c/o Samuel Israel, Managing Member
c/o Lawrence S. Bader, Esq.
Morvillo, Abramowitz, Grand, Iason &
Silberberg, P.C.
565 Fifth Avenue
New York, NY 10017

Andrew Bowman, Esq.
1804 Post Road East
Westport, CT 06880
*Attorney to Defendant Daniel E. Marino*

Richmond Fairfield Associates, Certified
Public Accountants PLLC
c/o Daniel E. Marino, Managing Member
c/o Andrew Bowman, Esq.
1804 Post Road East
Westport, CT 06880

/s/ Christine M. Ryall
Christine M. Ryall (CR 6041)
Commodity Futures Trading Commission
Division Of Enforcement
Three Lafayette Center
1155 21st Street, NW
Washington, DC 20581
(202) 418-5318