UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| COMMODITY FUTURES TRADING | : | Case No. 05-cv-8374 (CM) |
| COMMISSION, | : | |
| | : | **AMENDED MEMORANDUM OF** |
| Plaintiff, | : | **POINTS AND AUTHORITIES IN** |
| | : | **SUPPORT OF PLAINTIFF'S** |
| v. | : | **AMENDED APPLICATION FOR** |
| | : | **ENTRY OF JUDGMENT BY** |
| BAYOU, SAMUEL ISRAEL, DANIEL E. | : | **DEFAULT, PERMANENT** |
| MARINO, and RICHMOND FAIRFIELD | : | **INJUNCTION AND OTHER** |
| ASSOCIATES, CERTIFIED PUBLIC | : | **LEGAL AND EQUITABLE RELIEF** |
| ACCOUNTANTS PLLC, | : | **AGAINST DEFENDANTS DANIEL** |
| | : | **E. MARINO, AND RICHMOND** |
| Defendants. | : | **FAIRFIELD ASSOCIATES,** |
| | : | **CERTIFIED PUBLIC** |
| | : | **ACCOUNTANTS PLLC** |
| | : | |

I.      PRELIMINARY STATEMENT

On September 29, 2005, Plaintiff the Commodity Futures Trading Commission ("CFTC")

filed the Complaint in this civil action against defendants Daniel E. Marino ("Marino"),

Richmond Fairfield Associates, Certified Public Accountants PLLC ("Richmond Fairfield") and

others.  The Complaint seeks injunctive and other legal and equitable relief for violations of the

antifraud and other provisions of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C.

§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq.*  Although

properly served, Marino and Richmond Fairfield have failed to answer or otherwise respond to

the Complaint.  On October 2, 2007, the Clerk of the Court entered a Certificate of Default

against Marino and Richmond Fairfield.[1]

The Commission now seeks an order of default judgment, permanent injunction, civil

monetary penalty and ancillary equitable relief against Marino and Richmond Fairfield.  In

---

[1]  See Attachment A to the Application.

support of its Amended Application for Entry of Judgment By Default, Permanent Injunction and

Other Legal and Equitable Relief Against Defendants Daniel E. Marino and Richmond Fairfield

Associates, Certified Public Accountants PLLC ("Application"), the Commission submits this

memorandum along with the following attachments to the Application: (A) Clerk's Certificate of

Default, entered October 2, 2007, (B) the Complaint filed September 29, 2005, and (C) a

proposed Order of Default Judgment, Permanent Injunction and Other Legal and Equitable

Relief.

## II.    THE COURT SHOULD ENTER JUDGMENT BY DEFAULT AGAINST MARINO AND RICHMOND FAIRFIELD

### A.    Marino and Richmond Fairfield Are In Default

Both Marino and Richmond Fairfield were properly served with a summons and the

Complaint on October 19, 2005.  *See* Attachment A.  To date, Marino and Richmond Fairfield

have not filed an answer or otherwise pleaded in this action.  *Id*.  As a result, Marino and

Richmond Fairfield are in default.

### B.    The Well-Pleaded Factual Allegations in the Complaint Show that Marino and Richmond Fairfield are Liable for Violations of the Act

Once a defendant is in default, the well-pleaded factual allegations of the Complaint,

except those relating to the amount of damages, must be taken as true.[2]  Moreover, a party's

default is an admission of liability.[3]  Marino and Richmond Fairfield are in default.  Therefore,

the factual allegations of the Complaint are well-pleaded and should therefore be taken as true.

These factual allegations establish that Marino and Richmond Fairfield are liable for violations

---

[2]  *See Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981); *Nishimatsu Const. Co., Ltd. v. Houston Nat'l. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Aljassim v. S.S. South Star*, 323 F.Supp. 918,  922 (S.D.N.Y. 1971); *Partray v. Northwest Publ'g, Inc.,* 931 F. Supp 865 (S.D. Ga. 1996).

[3]  *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); see also *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992) (a party's default is deemed to constitute a concession of all well pleaded allegations of liability).

of Sections 4*o*(1) and 9(a)(3) of the Act and CFTC Regulations 1.16 and 4.20, as alleged in the Complaint.

### 1.    Bayou Violated Section 4*o*(1)

Section 4*o*(1) of the Act, 7 U.S.C. § 6*o* (2002), in two provisions, broadly prohibits fraud, deceits and misrepresentations by CPOs.  Section 4*o*(1)(A) of the Act makes it unlawful for a CPO to employ any device, scheme or artifice to defraud any participant or prospective participant by use of the mails.  Section 4*o*(1)(B) of the Act makes it unlawful for a CPO to engage in any transaction, practice or course of business that operates as a fraud or deceit upon any participant or prospective participant by use of the mails.  These sections apply to all CPOs whether registered, required to be registered, or exempted from registration.[4]  These sections apply to all CPOs whether or not the fraud occurs in connection with futures or options transactions.[5]

Section 4*o*(1)(B) does not expressly require "knowing" or "willful" conduct as a prerequisite for establishing liability.  In this regard, the Commission has held "[a]lthough scienter must be proved to establish a violation of section 4b and section 4*o*(1)(A), it is not necessary to establish a violation of section 4*o*(1)(B)."[6]  As a result, a charge of violating the "operates as a fraud or deceit" prohibition of Section 4*o*(1)(B) is likely to stand or fall on the question of whether the fact misrepresented or withheld was material.  A representation or

---

[4]    *See* Commission Regulation 4.15, 17 C.F.R. § 4.15; *CFTC ex rel Kelley v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985).

[5]    *See In re Slusser*, [1998-1999 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,701 at 48,313, 48,306 (CFTC July 19, 1999), aff'd in part, rev'd in part, *Slusser  v. CFTC*, 210 F.3d 783, (7th Cir. 2000).

[6]    *In re Kolter*, [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,262 at 42,198 (CFTC Nov. 8, 1994) (aff'g grant of summary disposition).

omission is "material" if a reasonable investor would consider it important in deciding whether or not to make an investment.[7]

The well-pleaded facts set forth in the Complaint establish that Samuel Israel ("Israel") and Marino, in their capacity as employees of Bayou,[8] made various material misrepresentations, omissions, misappropriations, deceits and cheats which constituted schemes to defraud pool participants and also operated as frauds and deceits upon those individuals.[9]  Their false representations in reports issued to pool participants regarding the rates of return Bayou generated for its pool participants and the value of assets it managed were both material and violate Section 4o(1) of the Act.[10]  Their false representations regarding the identity of the accounting firms that audited Bayou, its trading activity, and the nature of the instruments in which it invested customer funds were also material and violate Section 4o(1).[11]  Israel's and Marino's failure to disclose the fact that Bayou's chief financial officer – Marino - was the individual behind the sham accounting firm - Richmond Fairfield - that purportedly "audited"

---

[7]  *R.J. Fitzgerald & Co.*, 310 F.2d at 1329; *Saxe v. E. F. Hutton & Co., Inc.*, 789 F.2d 105, 109 (2nd Cir. 1986).

[8]  Bayou Management LLC is and was a CPO registered with the CFTC.  *See* 7 U.S.C. §1a(5) (2002).

[9]  Moreover, conduct alleged in the Complaint took place through the use of the mails or interstate commerce.

[10]  *R.J. Fitzgerald & Co.,* 310 F.3d at 1329-1330 (misrepresentation of profit are material); *CFTC v. U.S. Precious Metals Depository Co.*, 468 F.Supp. 1149, 1160 (S.D.N.Y. 1979) ("glowing" representations concerning market expectations and likelihood of profit are misrepresentations regarding profitability of investment); *Skorupskas*, 605 F. Supp. at 923 (issuing false monthly account statements to pool participants violates Section 4b of the Act).  Misrepresentations that violate Sections 4b of the Act also violate Section 4o(1).  *Id.* at 932-33.

[11]  *Psimenos v. E.F. Hutton & Co, Inc.*, 722 F.2d 1041, 1043-44 & n.5 (2nd Cir. 1983) (material misrepresentations about the nature of an organization, the quality of staff and the type of trading the funds would be used for can violate the Act);  *In re Slusser*, ¶ 27,701 at 48,313 (failing to adhere to the contractual limitations placed on use of the funds, devoting money to uses other than those allowed by the prospectus, commingling pool funds, and diverting investors' money to personal purposes violated the Act).  The Seventh Circuit subsequently affirmed the Commission's liability determinations in *Slusser*, as well as its imposition of a cease and desist order, registration revocations, and trading bans as sanctions.  It reversed the Commission solely as to the amount of civil monetary penalties to be assessed.  *Slusser v. CFTC*, 210 F.3d at 786-788.

Bayou pools was a material omission that violated Section 4*o*(1),[12] as was their investment in unauthorized instruments.[13]  Finally, by misappropriating pool participants' funds, acquiring their funds through false pretenses, engaging in unauthorized trading, and causing pool participants to pay federal income tax upon nonexistent income, Israel and Marino engaged in fraud or in conduct that operated as a fraud.[14]

At all time, Israel and Marino were employees of Bayou.   Because Israel and Marino engaged in violative conduct while acting within the scope of their employment with Bayou, it is liable for their conduct pursuant to Section 2(a)(1)(B) of the Act.[15]  Under Section 2(a)(1)(B) of the Act, strict liability is imposed upon the principal for the actions of their agents.[16]  Bayou is therefore liable for violations of Sections 4*o*(1) and 9(a)(3) of the Act.

## 2.    Bayou Violated Section 9(a)(3) and Regulation 1.16

It is a violation of Section 9(a)(3) of the Act to knowingly make, or cause to be made, false statements in a report or document required to be filed under CFTC Regulations 4.7(b)(3)

---

[12]  The fact that an accountant has a direct or material indirect financial interest in the client during the course of his engagement is material information.  *See Code Of Professional Conduct*, § 101.02(A)(1) (AICPA 1990); *see also Emcore Corp. v. PriceWaterhouseCoopers LLP*, 102 F.Supp.2d 237, 245 (D.N.J. 2000).

[13]  *See In re Interstate Securities Corp.*, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,295 at 38,955 (CFTC June 1, 1992) *aff'd sub nom. Crothers v. CFTC*, 33 F.3d 405 (4th Cir. 1994) (when a broker or a CPO willfully executes trades without the customer's permission or contrary to the customers' trading instructions he engages in fraud).

[14]  *CFTC v. Muller,* 570 F.2d 1296 (5th Cir 1978) (misappropriation of client funds violates the Act); *see U.S. v. Doke,* 171 F.3d 240, 243 (5th Cir 1999) (a scheme to defraud includes using false pretenses or representations to obtain money from the individual or institution to be deceived); *In re Union Carbide Corporation Consumer Products Business Securities Litigation*, 676 F.Supp. 458, 472 (S.D.N.Y. 1987) (elements of claim of deceit do not require evidence of benefit to the wrongdoer); *In re Interstate Securities Corp.*, ¶ 25,295 at 38,955 (unauthorized trading violates the anti-fraud provisions of the Act).

[15]  Section 2(a)(1)(B) of the Act and Regulation 1.2 provide, in pertinent part: "The act, omission, or failure of any official, agent, or other person acting for an individual, association, partnership, corporation or trust within the scope of his employment or office shall be deemed the act, omission or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent or person."

[16]  *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986); *Dohen-Ramirez & Wellington Advisory, Inc. v. CFTC*, 837 F.2d 847, 857-58 (9th Cir. 1988).

and 4.22(c).  CFTC Regulation 1.16, 17 C.F.R. § 1.16 (2004), requires that "certified" annual reports must be prepared by an independent public accountant or independent licensed public accountant.  Here, Bayou submitted to the National Futures Association purported "certified" annual reports that were purportedly prepared by Richmond Fairfield.  Marino was Bayou's chief financial officer, as well as the individual behind Richmond Fairfield, a sham accounting firm. Where the accountant has a direct or material indirect financial interest in the client during the course of his engagement, he is not independent.[17]  Thus, Marino and Richmond Fairfield were not independent.  Bayou submitted to the NFA purported "certified" annual reports that were not prepared by an independent public accountant and thereby violated Section 9(a)(3) and Regulation 1.16.

### 3.    Bayou Violated Regulation 4.20(c)

CFTC Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2004), prohibits CPOs from commingling the property of any pool it operates with the property of any other person.  By transmitting pool funds from the Bayou account held at Postbank to the ODL account held in Israel's name, it commingled his funds with those of Bayou's pool participants.  Accordingly, Bayou violated Regulation 4.20(c).

### 4.    Marino and Richmond Fairfield Aided and Abetted Bayou's Violations of the Act and CFTC Regulations

Pursuant to Section 13(a) of the Act, any person who commits, or who willfully aids or abets a violation of any provision of the Act, or any of the rules issued pursuant the Act, or who acts in combination or concert with any other person in any such violation, may be held responsible for the violation as a principal.  To establish liability as an aider and abetter the CFTC must show that (1) the Act was violated, (2) the aider and abettor had knowledge of the

---

[17]  *Code Of Professional Conduct*, § 101.02(A)(1) (AICPA 1990); *see also Emcore Corp.*, 102 F.Supp.2d at 245.

wrongdoing underlying the violation, and (3) the aider and abettor intentionally assisted the primary wrongdoer.[18] As discussed above, the Act and the CFTC's Regulations were violated.

The well-pleaded factual allegation set forth in the Complaint establish that Marino's intentional actions were critical to the execution of the fraudulent schemes and misappropriations that violated the Act and he was well aware of them. Marino knew that Bayou never generated a profit for its pool participants. Despite this fact, he generated the annual reports that were provided to both officials and pool participants that falsely asserted significant amounts of net profits. Moreover, Marino knowingly and falsely held Richmond Fairfield out as an "independent" accountant whose job was to independently verify the performance results of Bayou.

Marino knew that the reports would be provided to prospective and actual participants. He knew or should have known they would rely upon not only the information included, but also the fact that it had been "reviewed" and "certified" by an independent CPA. Marino knew that pool participants invested their funds with Bayou under false pretenses and that he ultimately would derive a benefit from these fraudulent solicitations by operation of the fact that he drew a salary derived from pool participants' funds. Therefore, Marino knowingly associated himself with the unlawful acts, participated in them as something he wished to bring about, and sought by his actions to make it succeed. Accordingly, Marino is liable for Bayou's violations of Sections 4*o*(1) of the Act pursuant to Section 13(a) of the Act.

---

[18] *In re Shahrokh Nikkhah,* [1999-2000 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 28,129 at 49,887-49,888 and n.28 (CFTC May 12, 2000). *See also In re Richardson Securities, Inc.*, [1980-1982 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,145 (CFTC Jan. 27, 1981) (to be guilty of aiding and abetting under the Act, one must knowingly associate himself with an unlawful venture, participate in it as something that he wishes to bring about, and seek by his actions to make it succeed).

Richmond Fairfield, by and through Marino, is also liable as an aider and abettor for those acts of fraud in which it was an integral part. The well-pleaded factual allegation set forth in the Complaint establish that Richmond Fairfield was integral in the fraudulent representations to pool participants that included the purported audits and fabricated annual reports. Because Marino fabricated these audits and annual reports, and did so as an employee of Richmond Fairfield, pursuant to Section 2(a)(1)(B) of the Act, Richmond Fairfield is also liable for Bayou's violations of Section 4*o*(1) as an aider and abettor.

As the chief operating officer and chief financial officer of Bayou, Marino participated in and was aware of Bayou's submission to the NFA of annual reports that were not performed by an independent public accountant or independent licensed public accountant and of the transfer of Bayou pool funds into an account of Israel. Accordingly, Marino is liable for Bayou's violations of Section 9(a)(3) of the Act and CFTC Regulations 1.16 and 4.20(c), pursuant to Section 13(a) of the Act.

In conclusion, Marino and Richmond Fairfield are in default. The well-pleaded facts set forth in the Complaint show that Marino and Richmond Fairfield are liable for violations of Sections 4*o*(1) and 9(a)(3)of the Act and CFTC Regulations 1.16 and 4.20(c), as alleged in the Complaint. Accordingly, the Court should enter judgments by default, finding them in violation of the Act and CFTC Regulations.

## III.  THE COURT SHOULD ENTER A PERMANENT INJUNCTION

Pursuant to Section 6c(a) of the Act, the Commission seeks a permanent injunction against Marino and Richmond Fairfield prohibiting any future violations of the Act and Regulations. Section 6c(a) provides that:

> Whenever it shall appear to the Commission that any registered person or other person has engaged, is engaging, or is about to engage in any act or practice

> constituting a violation of any provision of the Act or any rule, regulation, or
> order thereunder, or is restraining trading in any commodity for future delivery,
> the Commission may bring an action in the proper district court of the United
> States… to enjoin such act or practice, or to enforce compliance with this Act,
> or any rule, regulation or order thereunder, and said courts shall have
> jurisdiction to entertain such actions…

Unlike private actions, which are purely rooted in the equity jurisdiction of the federal court, the Commission's enforcement action seeking injunctive relief is statutorily authorized and is designed to prevent injury to the public and to deter future illegal conduct. Therefore, restrictive concepts ordinarily associated with private litigation, such as proof of irreparable injury or inadequacy of other remedies, are inapplicable.[19]

The Commission is entitled to injunctive relief upon a showing that a violation has occurred and there is a likelihood of future violations.[20] "The commission of past illegal conduct is highly suggestive of the likelihood of future violations"[21] and a district court may infer a likelihood of future violations from a defendant's past unlawful conduct.[22] As described above, the well-pleaded facts set forth in the Complaint show that Marino and Richmond Fairfield violated Sections 4o(1) and 9(a)(3)of the Act and CFTC Regulations 1.16 and 4.20(c). Moreover, the fraudulent activity continued until, or until shortly before, the filing of this action. Plaintiff respectfully requests that this Court permanently enjoin Marino and Richmond Fairfield

---

[19] *See CFTC v. Crown Colony Commodity Options, Ltd.*, 434 F. Supp. 911, 919 (S.D.N.Y. 1977); *Muller*, 570 F.2d at 1300; *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979).

[20] *See SEC v. Monarch Fund,* 608 F.2d 938, 943 (2d Cir.1979); *SEC v. Bausch & Lomb,* 565 F.2d 8, 14 (2d Cir.1977); *S.E.C. v. Price Waterhouse*, 797 F.Supp. 1217, 1243 (S.D.N.Y. 1992).

[21] *Crown Colony*, 434 F. Supp. at 919; *Hunt*, 591 F.2d at 1220; *CFTC v. British American Commodity Options Corp.*, 560 F.2d 135, 142 (2nd Cir. 1977).

[22] *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1251 (2d Cir. 1986); *CFTC v. Heritage Capital Advisory Serv., Ltd.*, [1982-1984 Transfer Binder] Comm. Fut. L. Rep. ¶ 21,627 at 26,385 (N.D. Ill. 1982).

from future violations of the Act and Regulations and prohibit them from operating within the commodity futures industry.

## IV.    THE COURT SHOULD ORDER THE PAYMENT OF RESTITUTION AND CIVIL MONETARY PENALTIES

### 1.    Restitution

Federal courts have uniformly recognized that the authority granted by Section 6c(d)(1) of the Act permits courts to order restitution and other relief to comply with the basic objectives of the Act.[23] Restitution aims to compensate the victims of wrongful acts.[24] Here, the defendants' actions were knowing and intentional and defrauded multiple victims of a large amount of money. Restitution is therefore warranted.

Although "a default judgment entered on well-pleaded allegations in a Complaint establishes a defendant's liability,"[25] the court must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.[26] Due to the pending criminal action against Marino, the CFTC requests that the Court order Marino and Richmond Fairfield to pay restitution, but defer the determination of the amount until after Marino has been sentenced and upon motion of the Commission.

---

[23]   *See CFTC v. Co Petro Mktg. Group, Inc.,* 680 F.2d 573, 583 (9th Cir. 1982) (holding that pursuant to inherent equitable authority as well as statutory authority granted by 7 U.S.C. § 13a-1, courts may grant ancillary relief where there have been violations of the Commodity Exchange Act); *Hunt,* 591 F.2d at 1222-23; *Skorupskas,* 605 F. Supp. at 943-944.

[24]   *See SEC v. AMX Intern, Inc*., 7 F.3d 71 (5th Cir. 1993).

[25]   *Bambu Sales, Inc. v. Ozak Trading, Inc.,* 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363 (1973))( a default judgment establishes liability).

[26]   *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999) (even when a default judgment is warranted based on a party's failure to defend, the allegations in the Complaint with respect to the amount of the damages are not deemed true); *Deshmukh v. Cook,* 630 F.Supp. 956, 959 (S.D.N.Y. 1986) (when a defendant defaults, "the factual allegations of the Complaint relating to liability are taken as true, but the allegations relating to the amount of damages are not").

### 2. Civil Monetary Penalty

Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), permits the district court to assess a civil monetary penalty against a person who violates the Act and Regulations. Here, the defendants violated the Act and Regulations. Their actions were knowing and intentional, defrauded multiple victims of a large amount of money and undermined the integrity of the U.S. commodity futures market. Marino and Richmond Fairfield should be ordered to pay a civil monetary penalty. Due to the pending criminal action against Marino, the CFTC requests that the Court find civil monetary penalties to be appropriate, but to defer the determination of the amount of the civil monetary penalties until after Marino has been sentenced and upon motion of the Commission.

## V. CONCLUSION

This Court should enter an order of judgment by default, impose a permanent injunction, and order the payment of restitution and civil monetary penalties. This relief is both within the power of this Court and appropriate under the present circumstances. As alleged in the Complaint, Marino and Richmond Fairfield engaged in conduct that violated the Act and CFTC Regulations and caused substantial injury to investors. By granting the injunctive and ancillary relief requested by the Commission, this Court can prevent further harm to the public.

Dated: March 4, 2008                    Respectfully submitted,
                                        ATTORNEYS FOR PLAINTIFF
                                        COMMODITY FUTURES TRADING
                                        COMMISSION
                                        1155 21st Street, N.W.
                                        Washington, D.C. 20581

                                        /s/ Christine M. Ryall
                                        Christine Ryall (CR 6041)
                                        (202) 418-5318 (Ryall)
                                        (202) 418-5523 (facsimile)

## Certificate of Service

I hereby certify that on March 4, 2008, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Local Rules on Electronic Service upon the following parties and participants:

Lawrence S. Bader, Esq.
Morvillo, Abramowitz, Grand, Iason &
Silberberg, P.C.
565 Fifth Avenue
New York, NY 10017
*Attorney to Defendant Samuel Israel*

Bayou Management LLC
c/o Samuel Israel, Managing Member
c/o Lawrence S. Bader, Esq.
Morvillo, Abramowitz, Grand, Iason &
Silberberg, P.C.
565 Fifth Avenue
New York, NY 10017

Andrew Bowman, Esq.
1804 Post Road East
Westport, CT 06880
*Attorney to Defendant Daniel E. Marino*

Richmond Fairfield Associates, Certified
Public Accountants PLLC
c/o Daniel E. Marino, Managing Member
c/o Andrew Bowman, Esq.
1804 Post Road East
Westport, CT 06880

_____/s/ Christine M. Ryall_____
Christine M. Ryall (CR 6041)
Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Center
1155 21st Street, NW
Washington, DC 20581