UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | : : : : | Case No. 05-cv-8374 (CM) **[Proposed]** |
| Plaintiff, | : : | **ORDER OF DEFAULT JUDGMENT, PERMANENT** |
| v. | : : | **INJUNCTION AND OTHER LEGAL AND EQUITABLE RELIEF** |
| BAYOU MANAGEMENT, LLC, SAMUEL ISRAEL, DANIEL E. MARINO, and RICHMOND FAIRFIELD ASSOCIATES, CERTIFIED PUBLIC ACCOUNTANTS PLLC, | : : : : : | **AGAINST DEFENDANTS DANIEL E. MARINO AND RICHMOND FAIRFIELD ASSOCIATES, CERTIFIED PUBLIC ACCOUNTANTS PLLC** |
| Defendants. | : | |

On September 29, 2005, Plaintiff the Commodity Futures Trading Commission ("CFTC") filed the Complaint in this civil action against defendants Daniel E. Marino ("Marino") and Richmond Fairfield Associates, Certified Public Accountants PLLC ("Richmond Fairfield"). The Complaint seeks injunctive and other legal and equitable relief for violations of the antifraud and exchange trading provisions of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq*.

Marino and Richmond Fairfield failed to timely file an answer or otherwise respond to the Complaint and are in default. On October 2, 2007, the Clerk of the Court entered a Certificate of Default against Marino and Richmond Fairfield. The Commission has now submitted an Amended Application for Entry of Default Judgment, Permanent Injunction and Other Legal and Equitable Relief ("Application"), pursuant to F.R.C.P. 55(b)(2) and Local Rule 55.2(b). The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Application and other written submissions of the Commission filed with the Court, and being fully advised in the premises, hereby:

**GRANTS** the Commission's Application and enters findings of fact and conclusions of law finding the defendants Marino and Richmond Fairfield liable as to all violations alleged in the Complaint. Accordingly, the Court now issues this Order of Default Judgment, Permanent Injunction and Other Legal and Equitable Relief ("Order") against defendants Marino and Richmond Fairfield.

## I.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.    Findings of Fact**

1.    Plaintiff Commodity Futures Trading Commission is a federal independent regulatory agency charged with the administration and enforcement of the CEA, 7 U.S.C. §§ 1 et seq., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*

2.    Defendant Bayou Management, LLC is a business entity organized in New York, with a principal business address in Stamford, CT. Bayou Management was registered with the Commission as a commodity pool operator ("CPO") beginning on April 9, 1996.

3.    Defendant Samuel Israel III is the sole owner of Bayou Management and head trader for the pools operated by that entity. Israel registered with the CFTC as an associated person ("AP") of Bayou Management and is listed with the NFA as a principal of Bayou Management. Israel is the Chief Executive Officer and Chief Investment Officer of Bayou Management, LLC.

4.    Defendant Daniel E. Marino was the chief operating officer and chief financial officer of Bayou Management. According to materials distributed by Bayou Management, Marino held these two positions from 1996, through late 2005. He is listed with the NFA as a principal of Bayou Management. Marino created and is the sole owner of defendant Richmond Fairfield. Marino was also listed as the registered agent for Richmond Fairfield from October

2

10, 2000 to April 29, 2003. Further, he is identified as the member/manager of Richmond Fairfield in records the state of New York maintains on those with professional licenses.

5. Defendant Richmond Fairfield Associates, Certified Public Accountants PLLC is a business entity organized in New York on or about October 10, 2000, with a principal business address in New York, New York.

6. On or about March 11, 1996, Bayou Fund, LLC ("Original Bayou Fund") commenced operations as a commodity pool, acquiring commodity pool identification number P004207 from the National Futures Association ("NFA"). Consequently, investors in the Bayou Fund LLC constitute pool participants, as that term is used in Section 4$o$(1) of the CEA. 7 U.S.C. § 6$o$(1) (2002).

7. In April 1996, Bayou Management registered with the CFTC as a commodity pool operator and as a commodity trading advisor ("CTA"). During the same month, Israel registered with the CFTC as an AP of Bayou Management and became listed as a principal of Bayou Management. In May 2005, Marino was listed with the NFA as a principal of Bayou Management.

8. In May 1996, Bayou Securities, LLC registered with the CFTC as a commodity futures introducing broker ("IB"). In that same month, Israel registered with the CFTC as an AP of Bayou Securities and became listed as a principal of that firm. In December 1997, Marino was listed with the NFA as a principal of Bayou Securities.

9. At all times, Israel has been Chief Executive Officer and Chief Investment Officer of Bayou Management. At all times relevant, Israel was aware that Bayou Management's trading of pool participants' funds was not profitable, incurred losses, and that such information was withheld from actual and prospective pool participants.

10. At all times during the relevant period, Marino performed the functions of Bayou Management's Chief Operating Officer and Chief Financial Officer. Marino was aware that Bayou Management's trading of pool participants' funds was not profitable, incurred losses, and that such information was withheld from actual and prospective pool participants..

11. Bayou Management's pool participants were individuals or entities that qualify as "accredited investors," with a minimum investment of $250,000.

12. According to the Operating Agreement for the Original Bayou Fund, the "Permitted Business" of the Original Bayou Fund included the purchase of, and investment in, financial instruments, indices, and derivatives, as well as the execution of commodities transactions. The same document authorized the "Manager" of the Original Bayou Fund to "open, maintain, and close accounts with securities and commodities brokers."

13. Between January to February 2003, Bayou Management, by and through Israel and Marino, ceased operating the Original Bayou Fund and instead created at least four successor commodity pools: "Bayou Accredited Fund, LLC," "Bayou Affiliates Fund, LLC," "Bayou No Leverage Fund, LLC," and "Bayou Superfund, LLC" (collectively, the "Successor Pools"). The Successor Pools were incorporated in the State of Delaware on January 28, 2003,, and the NFA assigned pool identification numbers to the Successor Pools, respectively: P020066, P020068, P020069, and P020071. Consequently, participants in the Bayou Accredited Fund, Bayou Affiliates Fund, Bayou No Leverage Fund, and Bayou Superfund, constitute pool participants, as that term is used in Section 4$o$(1) of the CEA. 7 U.S.C. § 6$o$(1) (2002).

14. According to Operating Agreements for the various Successor Pools, the "Permitted Business" of the Successor Pools included the purchase of, and investment in, financial instruments, indices, and derivatives, as well as the execution of commodity

4

transactions. These same documents authorized the "Manager" of the Successor Pools to "open, maintain, and close accounts with securities and commodities brokers."

15. From at least February 2002 through March 2004, Bayou Management engaged in commodity futures and options transactions on behalf of the pool participants of the Original Bayou Fund and the Successor Pools.

16. According to materials provided by Bayou Management to pool participants, Bayou Management conducted trading through Bayou Securities. Such activity generated commissions for Bayou Securities.

17. From at least January 1998 through August 2005, Bayou Management, by and through Israel and Marino, employed schemes to defraud or have engaged in practices which have operated as a fraud or deceit upon, actual and prospective participants in the Original Bayou Fund and the Successor Pools. Bayou Management, by and through Israel and Marino, perpetrated such frauds and deceits by using the U.S. mail or other means of interstate commerce.

18. From at least March 2001 through March 2005, Bayou Management, by and through Israel and Marino, represented to pool participants that the Original Bayou Fund and the Successor Pools were earning profits. Contrary to these profit representations, the Original Bayou Fund and Successor Pools never generated a net annual profit and, in fact, sustained trading losses. Pool participants relied upon these false representations. These false representations fraudulently induced individuals and entities into becoming pool participants and lulled individuals and entities into remaining pool participants. Israel and Marino knew these representations were false and misleading.

19. From at least March 2001 through March 2005, Bayou Management, by and through Israel and Marino, represented to its pool participants that the Original Bayou Fund and the Successor Pools had varying amounts of net assets under management. Contrary to these representations, the Original Bayou Fund and Successor Pools did not have the claimed amounts of funds under management. Pool participants relied upon these false representations. These false representations fraudulently induced individuals and entities into becoming pool participants and lulled individuals and entities into remaining pool participants. Israel and Marino knew these representations were false and misleading.

20. From at least December 2000 through August 2005, Bayou Management, by and through Israel and Marino, provided pool participants with Department of the Treasury Internal Revenue Service (IRS) forms. Specifically, Bayou Management provided their pool participants with Schedule K-1 forms that purportedly reported the amount of capital gains earned by the pool participants as a result of their participation in the Original Bayou Fund as well as the Successor Pools. Israel and Marino approved the submission of these forms to pool participants. The submission of these forms may have caused pool participants to pay, or subjected them to, undue taxes. However, since no profits were actually generated by Bayou Management's trading of the Original Bayou Fund, as well as the Successor Pools, the Schedule K-1 forms falsely reported non-existent capital gains and deceived pool participants. As a result of this deceit, pool participants paid funds to the federal government as taxes that were not due and owing.

21. From at least December 2000 through August 2005, Bayou Management, by and through Israel and Marino, represented to actual and prospective pool participants that the Original Bayou Funds and the Successor Pools' financial transactions were certified by an independent public accountant, to-wit: Richmond Fairfield. Contrary to these assertions,

6

Richmond Fairfield was not an independent public accountant. Rather, it was an entity created by Marino for the purpose of concealing the ongoing fraud perpetrated by Bayou Management, Israel, and Marino. Marino fabricated the "certified" annual reports produced under the name Richmond Fairfield. Israel was aware that Richmond Fairfield was not an independent public accountant. Pool participants relied upon these false representations.

22.     Pursuant to CFTC Regulation 4.7(b)(3), from at least March 2001 to March 2004, Bayou Management was required to provide the NFA with an annual report for the Original Bayou Fund. Pursuant to CFTC Regulation 1.16, certified annual reports must be prepared by an independent certified public accountant or independent licensed public accountant. Bayou Management provided to the NFA the purported "certified" annual reports fabricated by Marino through Richmond Fairfield. Bayou Management audits were not conducted by an independent certified public accountant or independent licensed public accountant. Both Israel and Marino knew the annual reports submitted to the NFA were not conducted by an independent accountant.

23.     Pursuant to CFTC Regulation 4.22(c), from at least March 2004 to March 2005, Bayou Management was required to provide the NFA with annual reports for the Successor Pools. Pursuant to CFTC Regulation 4.22(c), Bayou Management was required to provide to the NFA with certified annual reports. Pursuant to CFTC Regulation 1.16, certified audits must be prepared by an independent certified public accountant or independent licensed public accountant. Bayou Management submitted "certified" annual reports fabricated by Marino through Richmond Fairfield. Bayou Management audits were not conducted by an independent certified public accountant or independent licensed public accountant. Both Israel and Marino

knew the audits submitted to the NFA for the Successor Pools were not conducted by an independent accountant.

24.     From at least March 2001 through March 2005, Bayou Management, by and through Israel and Marino, represented to pool participants that its pools' financial transactions were audited by actual independent public accountants, including: Grant Thornton, Deloitte Touche, and Hertz, Herson & Co.  These material representations were false and misleading because Grant Thornton, Deloitte Touche and Hertz, Herson & Co never audited Bayou Management's pools.  In reality, Hertz, Herson & Co. audited only Bayou Securities.  Pool participants relied upon these false representations.

25.     From at least January 1998 through March 2003, in various materials provided to prospective and actual pool participants that identified and described Bayou Management officers and employees, Bayou Management failed to disclose the material fact that Marino served as Bayou Management's chief financial officer and chief operating officer.  In fact, Bayou Management failed to disclose any affiliation with Marino until at least the first quarter of 2002. Such omission was material because any Bayou pool participant/investor that had investigated Richmond Fairfield and learned that Marino was both the registered agent and listed as the "member/manager" for Richmond Fairfield in New York state records, would have considered it significant to also know as well that Marino was in fact principal, CFO, and COO of Bayou Management.  Israel and Marino knew of Marino's affiliation with Bayou Management and knew that it was not included in materials provided to pool participants that described officers and employees of Bayou Management.

26.     From at least April 2004 through August 2005, Bayou Management, by and through Israel and Marino, represented in various materials submitted to actual and prospective

pool participants that Bayou Management was actively trading pool participants' funds. However, Bayou Management had ceased all trading activity on or about March 2004. Israel also misrepresented to pool participants that he continued to trade subsequent to March 2004. Pool participants relied upon these false representations.

27. Pursuant to the terms of the operating agreements for the various pools managed by Bayou Management, the permitted business activities authorize Bayou Management to trade securities and derivatives. From at least April 2004 through July 2005, Bayou Management, by and through Israel and Marino, invested in other schemes that would purportedly generate above-average returns. Neither Israel nor Marino disclosed to pool participants the fact that Bayou Management invested in these unauthorized schemes and transactions.

28. From at least March 1999 through the present, Bayou Management, by and through Israel and Marino, misappropriated and cheated pool participants of funds. Bayou Management, by and through Israel and Marino, perpetrated such misappropriations and cheats by using the U.S. mail or other means of interstate commerce.

29. According to materials distributed by Bayou Management, it is entitled to allocate to itself 20% of the net profits generated by the performance of the Original Bayou Fund and the Successor Pools. This incentive fee was the only form of compensation agreed upon between Bayou Management and its pool participants. Pursuant to that fee arrangement, and according to materials provided to pool participants, Bayou Management, by and through Israel and Marino, assessed and acquired fees. However, from at least 1999 to August 2005, the Original Bayou Fund and the Successor Pools never generated the level of net profits that would have entitled Bayou Management to the amount of fees it assessed. Both Israel and Marino knew that Bayou

Management had not generated profits as a result of its trading and was not entitled to any incentive fees.

30. Bayou Management and Israel misappropriated the funds of the participants in the Original Bayou Fund and the Successor Pools. On July 8, 2004, $120 million was transferred from a U.S. Citibank account in the name of Bayou Management LLC, referred to as the "Bayou Fund Special Account," to an account at Deutsche Postbank in Germany in the name of Bayou Fund, LLC. The dollars were converted to €96,864,000. Thereafter, ODL Securities records show that on December 7, 2004, €90,000,000 of those funds was deposited into an ODL Securities account in the name of "Sam Israel III" rather than in an account held for the benefit of the funds true owners, the pool participants. Israel and Marino knowingly transferred pool participants' funds into Israel's account.

31. From at least January 1999 through September 2005, Israel and Marino acquired Original Bayou Fund participants' funds and Successor Pools participants' funds under false pretenses, and thereby cheated their pool participants. Specifically, Israel and Marino formed Bayou Securities to serve as the introducing broker for transactions executed by Bayou Management. Bayou Securities earned a commission on trades placed on behalf of Bayou Management and that commission was assessed from pool participant's funds. Israel and Marino drew a salary from Bayou Securities. However, as set out above, funds managed by Bayou Management and traded through Bayou Securities were fraudulently acquired. Israel and Marino knowingly acquired pool participants' funds under false pretenses.

**B.    Conclusions of Law**

32. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has

engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

33.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because the defendants reside in or transacted business in the Southern District of New York, and the acts and practices in violation of the Act occurred within this District, among other places.

34.     By the conduct described in Section I(A) above, Marino and Richmond Fairfield aided and abetted Israel and Bayou Management in directly or indirectly employing a device, scheme, or artifice to defraud commodity pool participants, or engaging in transactions, practices or a course of business which operate as a fraud or deceit upon commodity pool participants. Therefore, Marino and Richmond Fairfield are liable for Israel's and Bayou Management's repeated violations of Section 4*o*(1) of the CEA, 7 U.S.C. § 6*o*(1), pursuant to Section 13(a) of the CEA, 7 U.S.C. § 13c(a).

35.     By the conduct described in Section I(A) above, Marino repeatedly violated Section 9(a)(3) of the CEA by knowingly making, or causing to be made, false statements in a report or document required to be filed under CFTC Regulations 4.7(b)(3) and 4.22(c), 17 C.F.R. §§ 4.7(b)(3) and 4.22(c) (2004). Richmond Fairfield is liable for Marino's violations pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B).

36.     By the conduct described in Section I(A) above, Marino aided and abetted Israel and Bayou Management in submitting annual reports that were not performed by an independent public accountant or independent licensed public accountant. Therefore, Marino is liable for

Israel's and Bayou Management's violations of CFTC Regulation 1.16, 17 C.F.R. § 1.16 (2004), pursuant to Section 13(a) of the CEA, 7 U.S.C. § 13c(a).

37.     By the conduct described in Section I(A) above, Marino aided and abetted Israel and Bayou Management in commingling Israel's funds with those of Bayou Management's pool participants. Therefore, Marino is liable for Israel's and Bayou Management's violation of CFTC Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2004), pursuant to Section 13(a) of the CEA, 7 U.S.C. § 13c(a).

## II.
## ORDER

This Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. This Court therefore enters a permanent injunction, orders Marino and Richmond Fairfield to pay restitution and civil monetary penalties, in amounts to be determined at a later date, and orders other equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**A.     IT IS HEREBY ORDERED** that Marino and Richmond Fairfield, along with any of their agents, servants, employees or assigns and persons in concert or participation with them who receive actual notice of this Order by personal service or otherwise, and all other persons or entities served with a copy of this Order, are permanently restrained, enjoined, and prohibited from directly or indirectly:

1.     While acting as a Commodity Pool Operator, or an Associated Person of a Commodity Pool Operator, employing a device, scheme, or artifice to defraud commodity pool participants, or engaging in a transaction, practice or a course of business which operates as a fraud or deceit upon commodity pool participants, in violation of Section 4*o*(1) of the Act, including, but not limited to, conduct such as that set forth in Section I(A) above;

2. Making, or causing to be made, false statements in a report or document required to be filed under CFTC Regulations 4.7(b)(3) and 4.22(c), in violation of Section 9(a)(3) of the Act;

3. Submitting to the National Futures Association "certified" annual reports not prepared by an independent public accountant or independent licensed public accountant, in violation of CFTC Regulation 1.16; and

4. Commingling the property of any commodity pool with the property of any other person, in violation of CFTC Regulation 4.20(c).

**B.** **IT IS FURTHER ORDERED** that Marino and Richmond Fairfield are permanently restrained, enjoined, and prohibited from directly or indirectly engaging in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including but not limited to, the following:

1. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

2. Engaging in, controlling, or directing the trading of any futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

3. Soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

4. Placing orders or giving advice or price quotations, or other information in connection with the purchase or sale of commodity interest contracts for themselves and others;

5. Introducing customers to any other person engaged in the business of commodity interest trading;

      6.      Issuing statements or reports to others concerning commodity interest trading;

      7.      Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in CFTC Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

      8.      Engaging in any business activities related to commodity interest trading.

**C.**    **IT IS FURTHER ORDERED** that Marino and Richmond Fairfield shall each pay a civil monetary penalty in an amount to be determined by the Court upon motion of the CFTC.

**D.**    **IT IS FURTHER ORDERED** that Marino and Richmond Fairfield, jointly and severally with other defendants in this action, shall make full restitution in an amount to be determined by the Court upon motion of the CFTC to all persons who gave funds, either directly or indirectly, to the defendants as a result of the course of illegal conduct alleged in the Complaint. Payment procedure and distribution of restitution shall be determined by the Court at a later date.

**E.**    **IT IS FURTHER ORDERED** that:

      1.      Neither Marino nor Richmond Fairfield shall transfer or cause others to transfer funds or other property to the custody, possession or control of any other person for the purpose of concealing such funds or property from the Court, the Plaintiff, the Monitor, or any officer that may be appointed by the Court.

2. This Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.

**DONE AND ORDERED this _____ day of _____, 2008, at New York, New York.**

_____
**UNITED STATES DISTRICT JUDGE**

Dated: March 4, 2008                                Respectfully submitted,

                                                                /s/ Christine M. Ryall

Joseph Rosenberg (JR 5225)                          Christine M. Ryall (CR 6041)
Local Counsel                                       Eugene Smith (ES 2817)
Commodity Futures Trading Commission                Commodity Futures Trading Commission
140 Broadway                                        Division Of Enforcement
New York, New York 10005                            1155 21st Street, N.W.
(646) 746-9765                                      Washington, D.C. 20581
                                                    cryall@cftc.gov
                                                    (202) 418-5318

## Certificate of Service

      I hereby certify that on March 4, 2008, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Local Rules on Electronic Service upon the following parties and participants:

Lawrence S. Bader, Esq.                             Bayou Management LLC
Morvillo, Abramowitz, Grand, Iason &                c/o Samuel Israel, Managing Member
Silberberg, P.C.                                    c/o Lawrence S. Bader, Esq.
565 Fifth Avenue                                    Morvillo, Abramowitz, Grand, Iason &
New York, NY 10017                                  Silberberg, P.C.
*Attorney to Defendant Samuel Israel*               565 Fifth Avenue
                                                    New York, NY 10017

Andrew Bowman, Esq.                                 Richmond Fairfield Associates, Certified
1804 Post Road East                                 Public Accountants PLLC
Westport, CT 06880                                  c/o Daniel E. Marino, Managing Member
*Attorney to Defendant Daniel E. Marino*            c/o Andrew Bowman, Esq.
                                                    1804 Post Road East
                                                    Westport, CT 06880

                                                                /s/ Christine M. Ryall
                                                        Christine M. Ryall (CR 6041)
                                                        Commodity Futures Trading Commission
                                                        Division Of Enforcement
                                                        Three Lafayette Center
                                                        1155 21st Street, NW
                                                        Washington, DC 20581
                                                        (202) 418-5318